Argued February 2, decided April 7, 1914.

### STOTTS *v.* DICHDEL.*

(139 Pac. 932.)

**Highways—Establishment—Prescription—Evidence.**

1. In a suit to enjoin trespass on land, evidence *held* to show that the *locus in quo* was merely a private way used by a few neighboring persons and families; the owners retaining the right to maintain gates and to exclude the public in case of failure to keep the gates closed.

[As to adverse possession of highways and whether it creates title by prescription, see notes in 32 Am. Dec. 719; 14 Am. St. Rep. 278; 76 Am. St. Rep. 492.]

**Highways—Establishment—Prescription—Requisites.**

2. To establish a highway by prescription, the land must have been used by the public with the actual or implied knowledge of the land owner, adversely under claim or color of right, and not merely by the owner's permission, and uninterruptedly and substantially by way of a defined road for the period required to bar an action to recover land.

**Injunction—Subjects of Relief—Repeated Trespass.**

3. Where a trespass is continued, made up of successive acts, each comparatively unimportant in itself, and the threat and intention to continue is manifest, equity will enjoin it.

**Injunction—Subjects of Relief—Repeated Trespass.**

4. Though the existence of a public road is involved in a suit to enjoin repeated trespasses, the trial of that issue at law is not such a complete and adequate remedy as to bar the jurisdiction of equity.

[As to injunction against trespasses on real estate, see notes in 11 Am. Dec. 498; 53 Am. Rep. 346; 99 Am. St. Rep. 731.]

From Marion: WILLIAM GALLOWAY, Judge.

This is a suit by J. L. Stotts and Grace Stotts, his wife, against William Dichdel, Otto Faulk and Irwin

---

*The authorities on the question of injunction against repeated trespass are discussed in notes in 13 L. R. A. (N. S.) 173 and 21 L. R. A. (N. S.) 417.          REPORTER.

Lamb. From a decree dismissing the suit, plaintiff appeals. The facts are fully set forth in the opinion of the court. REVERSED AND REMANDED.

For appellants there was a brief and an oral argument by *Mr. Walter C. Winslow.*

For respondents there was a brief over the names of *Mr. George G. Bingham* and *Mr. Louis J. Adams,* with an oral argument by *Mr. Bingham.*

Department 2. MR. JUSTICE McNARY delivered the opinion of the court.

This is a suit to enjoin a trespass upon real property located near the western slope of the Cascade Mountains in Marion County. The defendants own land adjacent thereto. For a time exceeding 20 years, the general public and these defendants have been accustomed to pass over the lands upon a definite line of travel in order to reach a public road. Suitable gates guard the road at either end. In the beginning the road was like unto a mountain trail, being used coeval with the occupancy of the premises. Plaintiffs some three years prior to the trial became the owners of the property, having acquired the same with full knowledge of the road and the use made thereof by those finding it a convenient avenue for travel.

Defendants contend they have a prescriptive right to use the highway without molestation from plaintiffs, in that they and their predecessors in interest have for more than ten years traveled the road under a claim of right by reason of its establishment by the county court.

Plaintiffs claim that there is no public highway over their lands, and that defendants are trespassing when crossing the premises. The Circuit Court decreed a

dissolution of the injunction and a dismissal of the suit upon the hypothesis that the plaintiffs had a plain, speedy and adequate remedy at law. At the trial of the case there was no evidence offered to show an establishment of the road by the County Court over plaintiffs' premises as alleged in the answer of the defendants, nor was there sufficient evidence of adverse user of the premises to impress the lands with a public easement of travel. The testimony of Jos. Terry, from whom plaintiffs derived title, is illustrative of the character of the use to which the property was subject:

"Q. Did you formerly live on the property now owned by Mr. and Mrs. Stotts?

"A. Yes, sir.

"Q. What time did you dispose of that to Mr. and Mrs. Stotts?

"A. I think it was three years ago this coming spring.

"Q. At that time, and prior to that time, how long had you lived upon that place?

"A. Why, I don't remember exactly; something like seven years, I think.

"Q. When you first went there, were there many settlers in above you?

"A. No.

"Q. When did the settlers first begin to come in there?

"A. I think they begin to come in there that same spring I sold it.

"Q. This road—what is your knowledge with regard to—did you put gates up there first?

"A. No, sir.

"Q. You say you did not put the gates there first?

"A. No, sir.

"Q. Were the gates there before you went there?

"A. While I might have put in one or two extra gates on the line some place, most of the gates were there when I went there.

"Q. How long, to your knowledge, had the first people commenced to come in back there, to travel that road, prior to the time you sold the place?

"A. Well, they had traveled through there all the time when I was there, but before that I don't know anything about it.

"Q. Of course you do not know anything about before—

"A. As I told you a while ago I had known of them doing that all the time I lived there; they went through.

"Q. During the time that you lived on the place you never objected to people going backward and forward along there to get up in there?

"A. No, sir.

"Q. They traveled it freely and without any objection from any one?

"A. Yes, sir.

"Q. The fact of the matter is that they had your consent to do it, did not they, Mr. Terry?

"A. I don't remember of seeing any of them and telling them they could; if they come and said anything about it, if they come along and asked me to go through, I would tell them they could do so long as they kept the gates shut.

"Q. As long as they kept the gates shut?

"A. Yes.

"Q. Those gates were maintained there as long as you had the property?

"A. Yes, sir.

"Q. They opened and shut the gates and went through?

"A. Yes, sir."

1. A true statement of the case would be that the way was simply a crude mountain road sparingly traveled, for a period of time approaching 30 years, by the settlers living in the mountains to the east. In order to protect the premises from unnecessary invasion from man and beast, gates were provided and maintained at either end of the road where it crossed

the land in question, and that little or no work was ever bestowed upon that part of the road. In truth, the testimony clearly establishes the fact that the *locus in quo* never was a public highway, but was merely a private road open and used by a few persons and families residing in the neighboring foothills; that the owners at all times had the right to and did maintain gates; and that it was the duty of those enjoying the use of the way to keep the gates closed, and, in case of failure, the owners retained the right to exclude the public therefrom. This situation indicates an intention on the part of the owner of the soil to retain absolute control over the way.

2. We think the true doctrine upon this subject is that a highway may be proved by long usages, but a way, to become public, must be used in such a manner as to show that it is the intention of the owners of the land to dedicate the strip of land in use to the public.

To establish a highway by prescription, the land impressed with the use must have been used by the public with the actual or implied knowledge of the land owner, adversely under claim or color of right, and not merely by the owner's permission, and uninterruptedly and substantially by way of a defined road for the period required to bar an action for the recovery of possession of land: *Bayard* v. *Standard Oil Co.*, 38 Or. 438 (63 Pac. 614); *Parrott* v. *Stewart*, 65 Or. 254 (132 Pac. 523); 37 Cyc. 21.

We must resolve on this phase of the case that defendants showed no color of title, and that the use of the way in question was permissive by the grace of the owners, and therefore lacking the essential components to establish a road by prescription.

3. The important question in this case concerns the action of the Circuit Court in thrusting plaintiffs out of equity, upon the idea they had a remedy in a court

of law. In the well-considered case of *Chapman* v. *Dean,* 58 Or. 479 (115 Pac. 156), Mr. Justice BURNETT discusses the remedy afforded a complainant in equity, using the following forceful reasoning:

" * * Where the trespass is continued, made up of successive acts, each comparatively unimportant in itself, and the threat and intention to continue is manifest, equity will enjoin the same, for the reason that each separate trespass forms a separate cause of action, and it would be idle to require the plaintiff to bring a distinct action for each one of the small trespasses. It would be a waste of time and serve no good purpose for the plaintiffs to bring an action at law for every different landing made by defendants upon their land without authority. The actual damage accruing from each landing would be comparatively insignificant, and to try out each instance in an action at law would lead to a multitude of actions, the principles of which could be determined in one suit in equity."

No one will be found to dispute the rule that the principal remedy afforded by courts of law for injury is money damages, and that equity will not interfere by injunction if such damages will constitute an adequate compensation for the injury threatened or inflicted.

4. Counsel for defendants argue with much spirit that, because the controversy in this case turns upon the question whether or not there is a public road across the premises, the remedy is complete at law, and that the trial on that issue is the appropriate province of the jury, citing *Smith* v. *Gardner et al.,* 12 Or. 221 (6 Pac. 771, 53 Am. Rep. 342). In that case the court said that the manifest object of the suit was to determine whether a highway existed across the lands of the plaintiff, and used in connection therewith the following language:

"The mode by which it is sought to determine this question is not in the ordinary course of law, and ought not to be tolerated unless justified by particular facts which authorize the jurisdiction of equity. The practice of granting injunctions in cases of trespass is of comparatively modern origin, and is a jurisdiction sparingly indulged, and only upon a state of facts which show that the injury would be irreparable, and the remedy at law inadequate to redress the wrong or injury complained of."

This same judicial thought was approved and followed in *Tomasini* v. *Taylor,* 42 Or. 576 (72 Pac. 324), and in *Van Buskirk* v. *Bond,* 52 Or. 234 (96 Pac. 1103).

While the pioneer case held that the action laid in the complaint was a proceeding initiated solely to determine the existence or nonexistence of a road, and therefore equity ought not to assume jurisdiction unless justified by particular facts, yet the court did not go to the extent of saying that equity could not interfere simply because the existence of a road was put in issue, nor because there was a remedy at law. In our opinion the thing to be considered is whether the remedy is adequate and not merely that there is a remedy. Moreover, the remedy at law must be as practical and efficient as is the equitable remedy in rendering justice. In many cases, analogous in aspect to the one at bar, injunction is more prompt and efficient than the remedy provided by law, and because thereof there is a strong tendency to grant injunctions in those cases where formerly the remedy at law would have been deemed fully adequate: 22 Cyc. 771.

Great injustice would follow should the bald rule be announced that an injunction would not lie and that equity could not administer its remedy because the party accused of the trespass put the existence or non-existence of a roadway in question. More than that, there is no remedy provided by law whereby the owner

of property can establish the nonexistence of a road save only from the deduction which follows from the successful prosecution of a criminal case of recovery of damages in a civil action for trespass. These actions may be multitudinous, necessarily so, if they involve a number of trespasses. Or, by reason of their seeming insignificance, each unit of injury might be treated both by public officers and jurors as too inconsequential to merit serious consideration.

By reason of these concepts, we think that equity affords the only adequate remedy in suits of this kind, and therefore we are constrained to reverse the decree of the lower court and remand this case for such other proceedings as may be deemed advisable not inconsistent with this opinion. REVERSED AND REMANDED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE EAKIN concur.