Argued March 3, affirmed August 5, 1970

# DOYLE MILLING CO., *Appellant, v.*
# GEORGIA-PACIFIC CORPORATION
ET AL, *Respondents.*

473 P2d 135

*Wallace A. Johansen,* Coos Bay, argued the cause for appellant. With him on the briefs were McKeown, Newhouse & Johansen, Coos Bay.

*R. Alan Wight,* Portland, argued the cause for respondents. With him on the brief were King, Miller,

Anderson, Nash & Yerke and Frederic A. Yerke, Jr., Portland.

Before PERRY,* Chief Justice, and McALLISTER, SLOAN, O'CONNELL, DENECKE, HOLMAN and TONGUE, Justices.

## O'CONNELL, C.J.

This is a suit to enjoin defendants from using a road which crosses plaintiff's land. The suit was filed on June 4, 1968. The trial court denied the prayer for an injunction on the ground that the road in question was a public road. Plaintiff appeals.

Plaintiff is the owner of a parcel of land located in Coos County between Coquille and Myrtle Point. The property is bounded on the east by State Highway 42 and on the west by tracks of the Southern Pacific Railroad. Defendant Georgia-Pacific owns the adjacent property on the west side of the railroad tracks. The roadway involved in this case is a graveled road which runs from the southeast part of defendant's land across the railroad tracks and connects with Highway 42. The southern tip of plaintiff's property coincides with the point at which the roadway's southern edge crosses the railroad property. From that point, plaintiff's property line runs diagonally across the road in a northeasterly direction, so that a triangular segment of the road is on plaintiff's land. Only a relatively small part of the road crosses plaintiff's land. The rest of the roadway is on property that

---

* Perry, C.J., retired June 1, 1970.

has long belonged to a Mr. Houghton, who is not a party to this suit. The following diagram roughly depicts the position of the road:

Defendant purchased its land from Judge Dal M. King through a series of conveyance ending in 1950. Defendant did not make use of the road, however, until 1958 when it connected the road to its mill, which is located on the northern portion of its property. Since that time it has used the road without asking permission of plaintiff or anyone else. Defendant has also performed maintenance work upon the road.

Defendant rests its claim to a right to use the road on the following grounds: (1) the road became a public road by prescriptive use; (2) defendant acquired a prescriptive easement by adverse use for the necessary statutory period; (3) defendant acquired an "irrevocable license" to use the road arising out of an estoppel against plaintiff, and (4) defendant acquired an "easement of necessity" over plaintiff's land. The trial court held that the road became a "public road."

The earliest date for which there is evidence of road usage is 1933. At that time the road ran along its present course from Highway 42 across the land now owned by plaintiff (then owned by Darrell Brodie). The road provided access to the highway for a farmhouse located in the southern portion of the property now owned by defendant. From 1933 on it also provided access to a sawmill and a shingle mill on the parcel now owned by plaintiff. The road also served a small house on Mr. Houghton's property which was rented by him to various persons from time to time. There is no evidence indicating who originally built the road or for what purpose.

Occupants of both houses used the road for access purposes from 1933 until at least 1950. Judge King bought the larger farmhouse and surrounding land in 1944; he bought the smaller house sometime thereafter. He used the road in carrying on a dairy operation on what is now defendant's property and also on another adjoining ranch. Creamery trucks passed along the road to do business in connection with the operation carried on by Judge King and the operation carried on by his tenants. From time to time Judge King used the road to ship myrtlewood from his property to a nearby wood products manufacturing plant. There was

testimony that other persons used the road for access to Judge King's property without permission.

From 1948 until approximately 1962, there was a small lumber mill located west of the tracks on the Houghton property. The trucks operating from the mill passed along most of the roadway, making a slight detour to the southwest as it crossed the railroad tracks because of a grade problem and then proceeding south on the other side of the tracks to the mill. There was also some evidence of use by a pole company, also located on the Houghton land. The route used by traffic to the pole company plant was apparently somewhat different from that used by the mill traffic, and may not have crossed plaintiff's land at all. Aside from the use made by plaintiff and defendant, there is no other evidence of any traffic on the road since 1933.

We are of the opinion that the evidence is not sufficient to establish through prescriptive use either a public road or a private easement.[1]

In *Woods v. Hart*, 254 Or 434, 436, 458 P2d 945, 946 (1969), we said that "[w]here one uses an

---

[1] It has been argued that the doctrine of prescription is not adaptable in explaining the acquisition of the right of the public to use a roadway. Thus it is said: "It is submitted .that the interest acquired by the public after long user of private land for highway purposes should be determined *only* by application of the doctrine of dedication, and that the true test of the sufficiency of the user is whether it was for such a length of time and under such circumstances that interruption now would affect private rights and public convenience." Comment, 6 Tex L Rev 365 at 376 (1928).

In Stotts v. Dichdel, 70 Or 86, 90, 139 P 932 (1914), the court in describing the doctrine of prescription, said:

"We think the true doctrine upon this subject is that a highway may be proved by long usages, but a way, to become public, must be used in such a manner as to show that it is the intention of the owners of the land to dedicate the strip of land in use to the public."

existing way over another person's land and nothing more is shown, it is more reasonable to assume that the use was pursuant to a friendly arrangement between neighbors rather than to assume that the user was making an adverse claim."

In the present case the road was already in existence when the McFarland Pole Company, Tucker Milling Company, and Houghton's tenants began using it. There is no evidence that this use interfered in any way with Houghton or plaintiff's predecessor in the use of their respective parcels of land over which the road crossed.

The evidence indicates that the use of the road by Judge King and his tenants was also permissive only. Judge King testified as follows:

"Q   Now, did you ever have any conversations with Mr. Houghton concerning the use of the road?

"A   Just once. I don't remember the exact date but it was shortly after—I believe it was after I moved to the place. It might have been shortly after I bought it. I asked him about the road because it was getting a little rough, particularly across the railroad track where the high water would get over it on the west side of the railroad track, and I wanted to put some gravel on it and I didn't want to do it until I knew about the road. And I asked Mr. Houghton about it.

"And he indicated or said, Go ahead and use it or do anything I wanted to with it. In other words, words to that effect. I got the impression—whether he actually said that or not, I am not sure—that it was a dedicated road.

"*   *   *   *   *

"Q   Do you recall any specific conversation with Mr. Houghton, Judge King, where he did state

anything about the road being in fact a public road? Do you have any recollection of any such conversation?

"A   I don't know as he used the word 'public road.' He told me it was all right to go ahead and repair it and go ahead and use it for anything I wanted to. He was very nice about that. There was no question about that at all.

"*   *   *   *   *

"Q   You did get permission from Mr. Houghton?
"A   That is after I had been there for some time. Before putting any money in repairing it, I wanted to find out for sure."

■ This testimony tends to show that Judge King regarded his use of the road as permissive. The fact that Judge King did not similarly ask permission of plaintiff's predecessor is not of any significance. Since the road crossed only a small part of plaintiff's land, it is not unlikely that Judge King was unaware that any part of the road was on that land.

There was evidence that the road was used from 1933 to 1944 for ingress and egress to a farmhouse on the King property prior to the time he purchased it. The evidence does not disclose how the roadway easement arose. Assuming that it arose by prescription, the use was for the limited purposes associated with farming and not for the general use of the public.

■ Each of the foregoing uses of the road was made in connection with the use of a dominant estate for a specific purpose—for farming, for the operation of a mill, etc. There was no evidence of a use of the roadway by the public for other purposes. The use of the road by tradesmen and other business invitees did not transform these private easements into a public road. Uses for such purposes are commonly made in connection with the enjoyment of a private easement.

■ The point at which the use made of a road becomes so expansive that it becomes a public road is, of course, a question of degree. If it is contended, as defendant contends here, that the public way arose through prescriptive use, then certainly the use must be of such a character that the landowner is adequately apprised of the nature of the assertion being made so that he will know that his land will be burdened by a public servitude unless he takes proper action to prevent it.

There is nothing in the character of the use in this case which would have signaled to plaintiff or his predecessor such a pervasive public claim in the use of the road. We hold, therefore, that a public road was not created.

■ Assuming that a prescriptive easement was created to serve the farmhouse and farm uses by defendant's predecessor in title, the easement for such purposes cannot be expanded to include the industrial use now asserted by defendant.

As taught in 5 Restatement of Property, Servitudes § § 477-479 (1944), the use of the easement may expand to some extent with the evolution in the use of the dominant estate. But the change from a farm use to the industrial use now carried on by defendant is not within the permissible evolution described in the Restatement comment.[2]

---

[2] "* * * Uses satisfying the new needs are privileged, however, under the prescriptive easement if the condition requiring them is a normal development of the condition the needs of which were served by the adverse use which created the easement. A normal development is one which accords with common experience. It is, therefore, one which might reasonably have been foretold. Such uses, however, must be consistent with the pattern formed by the adverse use by which the prescriptive easement was

■ The evidence is not sufficient to support defendant's contention that an easement by necessity was created or that an "irrevocable license" arose by estoppel.

The decree of the trial court is reversed.

McALLISTER, J., concurring.

I concur in the result reached by the majority, but I cannot join in the conclusion, which is unnecessary to the decision, that the evidence indicates permissive use. The only direct evidence on that question is the testimony of Judge King, which is quoted in the majority opinion. I think it is clear that Judge King never thought he was using the road by permission. He asked Mr. Houghton about the road not before he used it, but before spending any money on its improvement. "Before putting any money in repairing it, I wanted to find out for sure." The total import of his testimony is that he asked Mr. Houghton for information, not for permission. He understood from his talk with Mr. Houghton that the road was a public one, and there is no evidence that he or anyone else ever sought permission from plaintiff or his predecessor to use the portion of the road crossing plaintiff's land which is, after all, the only portion of the road involved in this case.

created." 5 Restatement Law of Property, Servitudes § 479 at pp. 3001-2 (1944).

"Though some change in the character of the physical use of a servient tenement resulting from a change in the use of a dominant tenement is permitted, a change which unreasonably increases the burden upon the servient tenement is not permitted. An unreasonable increase in burden is such a one as it is reasonable to assume would have provoked the owner of the land being used to interrupt the use had the increase occurred during the prescriptive period." 5 Restatement Law of Property, Servitudes § 479, comment c, at 3003 (1944).