Argued October 9, 1972, affirmed March 23, 1973

RYBURN ET UX, *Appellants, v.* MARSHALL ET UX, *Respondents.*

507 P2d 1142

*George G. VanNatta,* St. Helens, argued the cause for appellants. On the brief were VanNatta & Petersen, St. Helens.

*Harold L. Olsen,* St. Helens, argued the cause for respondents. With him on the brief were Vagt & Olsen, St. Helens.

O'CONNELL, C.J.

This is an action of ejectment in which plaintiffs seek to recover possession of one half of a strip of land formerly used as a railroad right-of-way. Recovery is also sought for injury to the premises by defendants in the course of ousting plaintiffs from the strip. Plaintiffs claim the title to the property on the basis of adverse possession. Plaintiffs appeal from a judgment on a verdict for defendants.

The property in dispute is the southern one half of a strip which was a part of a railroad right-of-way owned in fee by the Goble, Nehalem & Pacific Railroad and used until 1930 by the Clark & Wilson Lumber Company for logging purposes. In 1931 the railroad rails were removed and Edward Orr, who owned property to the north of the strip, fenced in that segment of the entire grade which was adjacent to his southern boundary.

In 1940 Edward Orr sold his property to Mrs. Swatman, and this property was subsequently conveyed to Mrs. Swatman's son and daughter-in-law, Daisy Swatman, by deed dated July 30, 1947. The description

in the 1947 deed recited that property "lying north of the right-of-way of the railroad of the Clark & Wilson Lumber Company" was being conveyed.

By means of a land sale contract executed in June of 1965, Daisy Swatman sold to the plaintiffs the land she had received from her mother-in-law. This contract, like the aforementioned deed, recited that land to the north of the right-of-way was being conveyed. On August 24, 1971, after this controversy had arisen, Daisy Swatman conveyed by bargain and sale deed all of her interest in the railroad grade to the plaintiffs.

Meanwhile, record title to the grade passed from Clark & Wilson Lumber Company by mesne conveyances to Investment Management Corporation. In March of 1971, defendants purchased property to the south of and adjacent to the railroad grade, and after an argument arose between defendants and plaintiffs over ownership of the grade, defendants purchased the southern one half of the grade from Investment Management Corporation on August 20, 1971. Shortly thereafter defendants rolled back a length of the fence originally constructed by Edward Orr, entered the disputed strip and commenced construction of a fence down the centerline of the railroad grade.

Plaintiffs base their claim of title to the entire grade on the ground of adverse possession continued by themselves and their predecessors in interest for the statutory period of ten years. (ORS 12.050) In their answer, defendants deny ownership of the grade in plaintiffs and allege their own title to the southern one half of the grade.

Plaintiffs adduced evidence purporting to prove adverse possession during the statutory period and defendants countered with evidence which was designed

to prove that the possession was not in fact adverse. It is not necessary to summarize this evidence because the disposition of plaintiffs' assignments of error on appeal do not require it.

■ Plaintiffs first assign as error the court's refusal to grant plaintiffs' motion for a directed verdict made after both parties had rested. The grounds advanced by plaintiffs for the motion were as follows:

"* * * Now the reason we have for moving for a directed verdict is that we wish to challenge the rights of the defendant arising or appearing to arise from the deed of the Investment Management Corporation. The defendants took possession of this property forcibly just a matter of days or perhaps hours before this action was brought, and there's no evidence before this court from which a jury could find that Investment Management Company was ever in possession of this land. There's no evidence from which a jury could find that the Investment Management Company or any of its predecessors in interest had exercised any rights or privileges of ownership, had collected any rent or paid any taxes, had been in possession or had any right to possession at any time within ten years before this action was brought. The straight fact is that this property was abandoned 39 years or more ago, and the plaintiff—plaintiffs and their predecessors in right have 39 years in uninterrupted possession."

The foregoing grounds relied upon by plaintiffs are not sufficient to entitle them to a directed verdict. The fact that there was no evidence before the court from which the jury could find that the Investment Management Corporation was ever in possession of the strip in question is not sufficient to warrant a directed verdict for plaintiffs. One who has the record title to property need not go into possession in order to assert his rights.

Plaintiffs' seem to argue in the statement of the grounds for the motion that defendants must show that sometime within ten years before the action was brought defendants or their predecessors in interest had exercised such rights and privileges of ownership as collection of rents, payment of taxes, or possession of the land in dispute. This, in effect, is saying that defendants have the burden of proof to show that there was some kind of an assertion of record title within ten years before the action is brought. This puts the burden on the wrong shoulders.

■ It is plaintiffs' burden to show that they satisfied all the elements of adverse possession for the ten-year period; it is not defendants' burden to show that they asserted the record title in some way. Apparently plaintiffs' counsel felt that because he had introduced evidence that plaintiffs or their predecessors in interest were in possession until the very eve of trial, defendants should not be able to retake possession without a good explanation for doing so.[1] The length or recency of plaintiffs' possession is immaterial in allocating the burden of proof.

Plaintiffs' erroneous assumption also appears in their second assignment of error based upon the trial

---

[1] This appears from plaintiffs' argument in the brief: "The plaintiffs lost this case before the jury chiefly because the trial judge believed that a plaintiff in ejectment had to recover on the strength of his own title and not on the weakness of the defendants, and he was so fixed in his opinion that he refused to consider that the rule on which he so blindly relied might be subject to some qualification where the plaintiffs had previously been in possession and had been forcibly evicted therefrom only a few days before this action was brought. Can a party reverse the burden of proof in a legal action by performing an act of violence? Can a man who mugs you and takes your purse stand there and laugh at you in the event you can't prove you bought the purse at some time in the past?"

court's refusal to give the following requested instruction:

"You are instructed that under Oregon law a party out of possession of real property cannot recover possession unless he can prove that he had possession or had a clear right to possession at some time within ten years from the time he brings his action. A particular Statute is ORS 12.050, which reads as follows:

'An action for the recovery of real property, or for the recovery of the possession thereof, shall be commenced within 10 years. No action shall be maintained for such recovery unless it appear that the plaintiff, his ancestor, predecessor, or grantor was seised or possessed of the premises in question within 10 years before the commencement of the action.'

"Court therefore instructs you that the Investment Management Corporation could not have recovered possession of the premises, the subject of this action, excepting in compliance with the above law."

For the reason given above, this instruction would erroneously impose the burden of proof on the record title holder to show that he had the right to possession.

The third and fourth assignments of error, based upon the court's refusal to give requested instructions, are without merit for the same reason.

■ Plaintiffs finally assign as error the court's refusal to give the following requested instruction:

"The claim of ownership of a property arising from a mistake in or erroneous information followed by a taking and retention of exclusive possession of the property for a statutory period of ten years is sufficiently adverse a possession to meet all the technical requirements for establishing the ownership of the property, and you are accord-

ingly advised that if you find from the preponderance of the evidence that the Swatmans took possession of the property described in the Complaint, believing that it had reverted to them upon the abandonment of the railroad, and maintained exclusive possession of the property for more than ten years after that, the property became that of Swatmans and it now belongs to the plaintiffs."

The facts would not support a finding that plaintiffs, or their predecessors in interest, held possession of the strip under a mistaken belief that it belonged to them. The instruction is, therefore, inapposite. The trial court fully instructed the jury on the elements of adverse possession. Plaintiff was not entitled to anything more.

The judgment is affirmed.

McALLISTER, J., concurs in the result.