NYMAN, *Respondent,*

*v.*

CITY OF EUGENE, *Appellant.*

(No. 76-4147, CA 7743)

574 P2d 332

John B. Arnold and Stanton F. Long, Eugene, argued the cause for appellant. With them on the briefs was Johnson, Harrang & Mercer, Eugene.

Terence J. Hammons, Eugene, argued the cause for respondent. With him on the brief was Hammons, Phillips & Jensen, Eugene.

BUTTLER, J.

**BUTTLER, J.**

This proceeding involves a controversy submitted without suit or action pursuant to ORS ch 27. Defendant City of Eugene appeals from an adverse judgment which would have the effect of rendering void action taken by the Lane County Court (County Court) in 1952, and of requiring the city to compensate plaintiff (and perhaps all other owners involved) for a five-foot strip of land extending the length of her property abutting a public road defendant claims was widened by the action in question.

## STIPULATED FACTS

Plaintiff owns real property abutting Barger Drive, a public road in Eugene, Oregon, established as a county road in 1895 with a 40-foot right-of-way. The road, which has been used continuously since that date, was only improved with gravel over a width of about 20 feet. In February, 1950, owners of property abutting Barger Drive, in consideration of Lane County's promise to blacktop the drive, signed an instrument[1] ("agreement" herein) agreeing to give an additional five feet along the front of their respective properties abutting the road to provide a right-of-way 50 feet in width. Three pages of the agreement were found in the country road files and neither plaintiff's

---

[1] There are three legal size pages, each of which is headed by the following typewritten language:

"Eugene, Oregon,
February , 1950.

"To the COUNTY COURT FOR LANE COUNTY, OREGON.
"Gentlemen:

"The undersigned property owners abutting on County Road #32, known as Barger Avenue, hereby agree to give an additional five feet along the front of our property on said County Road, where necessary to provide a right-of-way for said road fifty feet in width."

Immediately following that language, there are typed lines for the signatures and addresses of the signators.

[ 309 ]

nor her predecessor in interest's signature appears on any of those pages.[2]

On January 31, 1951, the County Court adopted Resolution 2178 declaring its intention to widen Barger Drive to 50 feet, stating that the widening was, "All as agreed to by the property owners abutting on said road." Notice of the resolution was duly posted and, on April 2, 1952, was acted upon by the County Court as evidenced by entry in the County Court Journal which "ordered established" a fifty-foot right-of-way in accordance with Resolution 2178.

In the fall of 1952, Lane County blacktopped the existing gravelled portion of the right-of-way. At the same time, the county moved a fence (approximately one-quarter mile in length) located at the edge of the original 40-foot right-of-way to a line 25 feet from, and parallel to, the center line of the right-of-way. The fence, however, was not on plaintiff's predecessor's property or on property adjacent thereto. The county maintained the road until 1966, when the area in question was annexed by the city, at which time the defendant assumed jurisdiction over Barger Drive.

Plaintiff purchased the real property in question in 1967, without actual knowledge of the additional five-foot right-of-way claimed by defendant.

In April of 1975, defendant adopted an ordinance providing for the improvement of the road, including widening of the paved portion thereof and installing curbs and sidewalks. At that time, neither defendant nor plaintiff had actual knowledge of the earlier County Court proceedings. In September of that year, defendant learned of those proceedings and commenced construction of the road improvements in the

---

[2] All of the lines on two of the pages bear signatures, and on the third page all of the lines, except the last line, bear signatures. There is nothing in the record to indicate whether there were other property owners along Barger Drive whose property was involved, but whose signatures are missing. In this state of the record, therefore, it is reasonable to infer that plaintiff's predecessor is the only landowner whose signature is missing.

good faith belief that the right-of-way was 50 feet wide.

Questions presented are: (1) Did the described action of the County Court validly widen Barger Drive to 50 feet? (2) If not, may plaintiff attack collaterally the action taken by the County Court in 1952? (3) If so, are plaintiff's rights barred nevertheless by adverse user or by the passage of time?

## I. COUNTY COURT'S 1952 ACTION

The parties agree that the County Court purported to exercise its authority under section 100-1223(f), OCLA,[3] to widen any road "by agreement." Plaintiff contends, however, that the County Court did not make a finding of public necessity for the widening, and its failure to do so constituted a jurisdictional defect rendering the action taken absolutely void, subject to collateral attack. Defendant contends that no such finding was necessary. The trial court agreed with plaintiff.

Plaintiff also contends that the proceedings were void because plaintiff's predecessor in interest did not sign the only agreement found in the public records; defendant relies on the presumption that public duty has been regularly performed, by virtue of which it must be presumed that all property owners signed the agreement.

### A. Determination of Public Necessity

■ An analysis of the relevant statutes, which are by no means clear, leads us to the conclusion that a determination of public necessity was not essential where the effect of the widening was to acquire the real property by agreement of the abutting owners,

---

[3] All statutory references are to OCLA, which was the code in effect at the times relevant to the 1952 proceedings. The same, or substantially similar, statutes appear in ORS 368.405 through ORS 368.546. No further reference will be made herein to ORS.

rather than by an involuntary taking. Section 100-1203, OCLA, set forth four methods by which proceedings to establish or alter county roads could be instituted: (1) by petition of freeholders; (2) by resolution of the county court; (3) by grant of owners of necessary rights-of-way; and (4) by condemnation.

With respect to proceedings instituted by petition, it was necessary that the petitioners be "freeholders of the county residing in the road district," (§ 100-1206, OCLA), and that the petition describe the terminal points of the proposed road, the width, etc., "and the public necessity therefor." § 100-1207, OCLA. Ensuing sections set forth procedures for filing petitions for damages by persons whose lands were "directly affected," and for a hearing thereon. If the county court "does not consider the road of sufficient importance to the public," the court was required to terminate the proceedings. § 100-1218, OCLA.

Similar proceedings could be instituted by resolution of the county court under section 100-1223 (a), (b), (c) and (d), OCLA,[4] which prior to 1927 comprised the entire section, and contemplated involuntary acquisition of property for road purposes. Such a procedure

---

[4]Section 100-1223(a), (b), (c) and (d), OCLA, provides:

"The county court of any county at any regular term may, by resolution, declare its intention to locate, establish, alter, widen, straighten, or change the direction of any road, and such notice shall thereupon be given as is provided for upon the filing of a petition for such purposes, and like proceedings shall be had by such county court as in the case of the filing of a petition before it, asking for such improvement, except as hereinafter particularly specified:

"(a) The notices to be posted shall consist of true copies of the resolution of the county court, properly certified to as such by the county clerk, and the same shall be posted by the county roadmaster, or the county engineer, or county surveyor, or a duly qualified deputy, as directed by the county court; and

"(b) No bond shall be required; and

"(c) If any objections or remonstrances shall be presented or filed, the county court shall hear the same, and the county court shall have the power, in its discretion, for good and sufficient reasons, to overrule and deny the same; and

"(d) All damages shall be paid for out of the county road fund; * * *"

was involved in *Latourette v. County Court,* 121 Or 323, 255 P 330 (1927), where it was held that the initiating resolution must include a determination of public necessity.

Condemnation proceedings, authorized by section 100-1229, OCLA, required a declaration of the necessity for the acquisition before proceedings could be commenced. All of the foregoing proceedings involve an involuntary taking and required a declaration of necessity.

Prior to the 1927 amendments, the only statutory provision relating to voluntary acquisition by the county of property for county roads was section 100-1224, OCLA, which did not require a determination of public necessity before accepting a formal deed of dedication.[5]

In 1927, subsections (e) and (f)[6] were added to section 100-1223, OCLA, by Oregon Laws 1927, ch 238, which contained an emergency clause reciting the necessity to proceed with construction of roads, then being established, during the dry season of the year. Apparently it was intended that subsection (f) permit a more expeditious method of proceeding, different from the proceedings previously encompassed by the statute. Included was a procedure for voluntary acquisition short of, and less formal than, a deed of dedication, which could be initiated by resolution of the county court "by agreement" of the property owners whose property would be affected.

---

[5]Under that section, the acceptance must be evidenced by an order entered in its journal; otherwise, the county may not expend funds to improve it, although the road will be a "public highway." *See,* 24 Op Att'y Gen 355-6 (Or 1948-50), and 25 Op Att'y Gen 86 (Or 1950-52).

[6]Section 100-1223(f), OCLA, provides:

"(f) The county court shall have the power, in its discretion, to procure right of way, either by acceptance of donations, by purchase, or by agreement, or a board of road viewers may be appointed whose sole duty it shall be to determine and assess the damages, taking into consideration the benefits, of the road as located."

Because this subsection is more analogous to dedications than it is to involuntary taking, we conclude that where the county court proceeded by agreement thereunder its resolution was not required to contain a determination of the public necessity for the acquisition.

B. Presumption of Regularity

■ A more difficult problem is presented by the failure of the public record to disclose the signature of the plaintiff's predecessor on any of the three pages included as part of the "agreement." We construe section 100-1223(f), OCLA, to require all of the property owners whose property would be acquired to "agree" before the county court could initiate proceedings "by agreement." There is no direct evidence that plaintiff's predecessor signed the agreement, but defendant contends that the recitation in Resolution 2178, "All as agreed to by the property owners abutting on said road" must be construed to mean that all of the owners agreed, which is supported by the presumption that official duty has been regularly performed. § 2-407(15), OCLA. (Now ORS 41.360(15)).

■ A county court, when transacting county business such as laying out county roads, is an inferior tribunal of special and limited jurisdiction, and all facts necessary to confer jurisdiction must appear on the face of the record of its proceedings; the presumption of regularity will not operate to support jurisdiction; *Columbo et al v. Hewitt et al,* 221 Or 121, 350 P2d 893 (1960). However, once jurisdiction is established, the presumption applies to its acts the same as it does to courts of general jurisdiction. *Morton v. Hood River County,* 88 Or 144, 171 P 584 (1918).

■ It is necessary, therefore, to determine what was necessary to establish jurisdiction of the county court in the 1952 proceeding. In *Morton,* the court held, in denying a writ of review, that the filing of the petition to lay out a county road, coupled with the posting of notices required by law, vested jurisdiction in the

county court. However, proof of posting must be in the record; a mere recitation that proof of posting has been made "to the satisfaction of the court" is not sufficient. *State of Oregon v. Officer,* 4 Or 180 (1871), quoted with approval in *Columbo.*

■ By analogy, where the county court proceeded by a resolution which was premised on there being an agreement of all of the owners of property to be acquired, it may not obtain jurisdiction to acquire the owners' property without an affirmative showing in the record that all of such owners signed the agreement. A recitation is not enough.

Accordingly, we hold that the presumption that official duty has been regularly performed is not available.[7]

## II. COLLATERAL ATTACK

6. Even if the County Court did not acquire jurisdiction, defendant contends that the only remedy available to an aggrieved property owner was by writ of review. The parties agree that the action of the County Court constituted the "transaction of county business." Section 13-505, OCLA, provided that such action "shall only be reviewed upon the writ of review provided by this Code." Under section 11-204, OCLA, the writ "shall be allowed in all cases where the inferior court, officer or tribunal in the exercise of judicial functions appears to have exercised such functions erroneously, or to have exceeded its or his jurisdiction * * *."

Assuming that the proceedings at issue involved judicial functions, we agree with defendant that, as a

---

[7]Even if the presumption were available, it might be equally applicable to support the proposition that the public record is complete, because section 93-927(3) and (4), OCLA, requires each county clerk to keep the records, files and other books and papers appertaining to the court, and to file all papers delivered to them for that purpose in any action, suit, or proceeding in the court. When two presumptions conflict with each other and the presumptions are of the same or similar value, they balance and cancel each other. *State ex rel v. Olcott,* 67 Or 214, 135 P 95, 135 P 902 (1913).

general proposition, jurisdiction could have been challenged only by writ of review. But such a limitation could only be imposed upon those persons over whom the County Court acquired jurisdiction. By posting the notice required by the statute, the County Court acquired jurisdiction over persons who might claim to be affected by the proceedings, but whose property was not acquired as a result of the proceedings, and over persons who had signed the agreement. Any of those persons could have challenged the action by writ of review, and only by that procedure. *Re Petition of Reeder et al,* 110 Or 484, 222 P 724 (1924).[8]

Plaintiff, however, is in a different posture. Her predecessor in interest did not sign the agreement, and the question is whether the County Court acquired personal jurisdiction over her predecessor. We think not. As we construe the various sections referred to above, the statutory pattern is that posted notice permitted the county court to acquire jurisdiction over those persons who had either signed a petition (§ 100-1209, OCLA) or an agreement (§ 100-1223(f), OCLA), but that a mailed notice was required to obtain personal jurisdiction over nonpetitioning owners (§ 100-1209, OCLA) or owners in the district when proceedings were instituted by resolution (but without the agreement of the owners) (§ 100-1223, OCLA). Of course, section 100-1223(f), OCLA, was based on the assumption that the only persons whose property was being acquired for the road had signed an agreement, so posted notice was deemed adequate under those circumstances. In this case, however, the plaintiff's predecessor was in a position analogous to a nonpetitioning owner under § 100-1209, OCLA, but no notice

---

[8] *But see, Jaquith et ux v. Hartley et al,* 243 Or 27, 411 P2d 274 (1966) holding that an order of the County Court signed only by the county judge and not concurred in by a majority of the county court was not within the purview of a writ of review and was subject to collateral attack. *See also, Columbo et al v. Hewitt et al,* 221 Or 121, 350 P2d 893 (1960), where the County Court attempted to enter an order in 1948 stating the assumed intention of an order made in 1927 relating to the vacation of roads; the 1948 order was held to be subject to collateral attack as a "mere nullity."

was mailed because § 100-1223(f), OCLA, did not require it.

We conclude that the County Court did not acquire personal jurisdiction over plaintiff's predecessor, and therefore her predecessor was not required to challenge the action by writ of review.

Because plaintiff's predecessor could attack the County Court action collaterally, so may plaintiff, unless she is barred by adverse user or otherwise by the passage of time.

### III. ADVERSE USER

■ Defendant contends that the county was in possession of the widened right-of-way for more than ten years and the public thereby acquired title by adverse user pursuant to ORS 12.050. The party asserting title by adverse possession has the burden of proving all of the elements, *Ryburn v. Marshall,* 265 Or 30, 507 P2d 1142 (1973). The use must be actual, *Stotts v. Dichdel,* 70 Or 86, 139 P 932 (1914), with knowledge of the record owner, *Parrott v. Stewart,* 65 Or 254, 132 P 523 (1913), and the use must be of such a character that the landowner is adequately apprised of the nature of the assertion being made so that he will know his land will be burdened by public servitude unless he takes proper action to prevent it. *Doyle Milling v. Georgia-Pacific,* 256 Or 271, 473 P2d 135 (1970).

■ In the case at bar, the facts do not support any actual use of the right-of-way beyond the original 40-foot width. When the road was paved in 1952, it was paved over what had been a gravel surface 20 feet wide. The only fact to which defendant can point is the moving of a fence on another person's property not adjacent to plaintiff's predecessor's property, but nothing further was done to use the additional width. Defendant relies on *Huggett et ux. v. Moran et ux.,* 201 Or 105, 266 P2d 692 (1954), which holds that when a public road is established by prescription, the width

thereof is the minimum necessary to the establishment of a legal road in the absence of evidence of the taking of a greater amount. However, Barger Drive was not established by prescription so *Huggett* is not applicable.

We hold that the County did not acquire title to plaintiff's property by adverse user.

If the facts were as stated by the dissent, a plausible argument could be made that the defendant owns the additional right-of-way by virtue of adverse user. Certainly, if "the public has been in open, notorious and undisputed possession of the entire right-of-way" since 1952, it would be a different case. Those are not the facts; neither the County nor defendant occupied the additional five feet in *any* way and defendant does not even so contend. The extent of its claim is that the County moved *a* fence on some property *not* adjacent to plaintiff's property.

The dissent further states that the County, after the 1952 proceedings, expanded its use of Barger Drive. That is not the fact; all that was done was to pave the original gravelled portion, which was about 20 feet wide.

Additionally, it is not stipulated that "neither plaintiff nor her predecessor asserted any claim to the strip until April 1975." Plaintiff is the record owner, and the stipulation is that "plaintiff has not commenced an action for the recovery of real property, or for the recovery of the possession thereof, prior to the submission of this controversy." Fortunately, title to real property is not so fragile that the holder of the record title is required periodically to assert publicly the ownership thereof.

Lastly, the County did not "duly record" anything with "the boundaries being defined," as the dissent states.

[ 318 ]

## IV. PASSAGE OF TIME

■ Defendant contends lastly that plaintiff's claim is barred by the passage of time either because the claim must have been asserted within the 60-day period allowed for the filing of a writ of review or within the ten year statute applicable to actions for negligent injury to property, or under the doctrine of laches. In support of its first point, defendant relies on *Brooks v. Dierker,* 275 Or 619, 552 P2d 533 (1976), and *Brooks v. Smith,* 27 Or App 441, 556 P2d 696 (1976). Those cases stand for the proposition that where a writ of review is available to the plaintiff, but the plaintiff proceeds by way of declaratory judgment, the limitation period applicable to a writ of review controls. While the case at bar is not a declaratory judgment proceeding, the analogy may be apt if we assume that plaintiff's predecessor was required to take some action in 1952. Because we have held that plaintiff's predecessor was not subject to the County Court's jurisdiction in the 1952 proceeding and was not bound thereby, we conclude that her predecessor was not required to do anything at that time.

■ In support of its second point, defendant relies on the fact that the legislature has set ten years as the maximum period within which any action must be commenced: ORS 12.050, 12.115 and 12.140. Defendant then discusses the public policy considerations with respect to maximum periods of limitation, all of which are valid as general propositions. Here, however, no cause of action arose in favor of plaintiff or her predecessor prior to 1975 becuase neither the County nor defendant interfered with their possession, use or enjoyment of the property until that time.

■ Defendant's final point is that because plaintiff's predecessor in interest, along with other abutting landowners, benefitted by the paving of the road they had requested, which they knew would not occur until the right-of-way was widened, she is barred under the equitable doctrine of laches. The contention assumes

[ 319 ]

more than the facts permit. We do not know whether plaintiff's predecessor was among those who requested that the road be paved and there is nothing to indicate that plaintiff's predecessor was a party to the agreement or even knew of it. Defendant suggests that both plaintiff and her predecessor had constructive notice of the County's claim of acquisition, or at least had sufficient facts to impose a duty on them to inquire. With respect to the predecessor, the most that can be said is that if he saw and read the posted notice, he would have learned that some of the property owners had agreed to give the County five feet of their respective properties to widen the road.

With respect to plaintiff, there was nothing recorded in the deed records to give her constructive notice. Even if we assume she had a duty to examine the County Court Journal, as defendant contends, she would have learned that her predecessor did not sign the agreement. The only evidence in this proceeding is that plaintiff did not have actual knowledge of the defendant's claim until defendant commenced constructing improvements utilizing the full 50-foot right-of-way in 1975, and at that time plaintiff asserted her claim immediately.

 It is sufficient to point out that full knowledge of all of the facts, plus delay for an unreasonable period of time, are essential elements of the defense of laches, *Kelly v. Tracy,* 209 Or 153, 305 P2d 411 (1956), and that laches will not begin to run until the plaintiff has actual knowledge, *Wills v. Nehalem Coal Co.,* 52 Or 70, 96 P 528 (1908), or is chargeable with knowledge she might have obtained upon inquiry if she had knowledge of facts which would have put a duty to inquire on a person of ordinary intelligence. *In Re Webster's Estate,* 74 Or 489, 145 P 1063 (1915). No such facts are presented here.

\* \* \*

The judgment of the trial court is affirmed.

**JOSEPH, J.,** specially concurring.

The majority (as well as the trial court in a different way) has arrived at a proper result by following a route through the statutes and case law that is erroneous and potentially troublesome for Oregon counties and the expanding cities of the state. I believe it is important to state the legally correct route to the result.

The majority begins to go astray with the first sentence in section I of the opinion with the reference to "authority under section 100-1223(f), OCLA, to widen any road 'by agreement.' " In the first place I do not agree that the parties in their so-called "amended stipulation" upon which this case was tried (as an ORS ch 27 controversy submitted without action or suit) or in their briefs depend upon any such "authority." However that may be, in the second place the referenced subparagraph was *not* "authority" for a *procedure* to widen a county road. It merely provided alternative methods by which the county could "procure right of way" under one of the four procedures for widening county roads provided by statute.

Section 100-1203, OCLA, unambiguously provided that "[p]roceedings for the * * * alteration, * * * of county roads shall be instituted" by petition, by resolution of the county court, by *grant* by owners of the necessary rights of way or by condemnation proceedings. Sections 100-1206 through 100-1222, OCLA, defined the petition method. Section 100-1223, OCLA, set out the method to be initiated by a resolution of the county court. Apparently §§ 100-1224 through 100-1227, OCLA, encompassed variations of the method involving grants by owners of necessary rights of way. Finally condemnation procedures were defined by §§ 100-1228 through 100-1230, OCLA. Prior to the enactment of Oregon Laws 1927, ch 238, in the event proceedings were initiated by resolution of the county court, title to necessary property for a road widening could only be acquired by the same method title could

be acquired under the petition method; i.e., by the appointment of a board of county road viewers and the consequent steps under §§ 100-1209 through 100-1220, OCLA. The 1927 Act added subsections (e) and (f) to § 100-1223, OCLA. The latter subparagraph provided for less cumbersome methods for acquisition of necessary rights of way as alternatives to the appointment of viewers. That was its only effect.

As stipulated by the parties, the widening of Barger Drive was initiated by a resolution under § 100-1223, OCLA. The so-called agreement found in the records had nothing more to do with the procedure than what it stated on its face:

> "The undersigned property owners abutting on * * * Barger Avenue, hereby agree to give an additional five feet along the front of our property * * *, where necessary to provide a right-of-way for said road 50 feet in width."

The parties have agreed here that the agreement was made in consideration of the county's promise to blacktop the center 20 feet of the widened right of way and that that promise by the county was eventually carried out in full. Presumably, had the proceeding been carried out to its final step, once the county had fully completed the resolution proceeding and the blacktopping, it could have required the agreeing landowners to make the necessary conveyances. There is nothing in the record before us to show that the county ever actually acquired the widened right of way by enforcing the agreements, and considering the trouble the parties have gone to to examine the record it is very probable that the county never took that step.

Under § 100-1223, OCLA, once the county court declared its intention to widen Barger Drive, "such notice shall thereupon be given as is provided for upon the filing of a petition for such purposes, and like proceedings shall be had by such county court as in the case of the filing of a petition before it * * * except" as otherwise specifically provided by subparagraphs (a),

[ 322 ]

(b), (c), (d), (e) and (f) of that section. Examination of those subparagraphs reveals that they modified the petition method only with respect to the contents of *posted* notices, the bond requirement, proceedings on the hearings of objections or remonstrances, the source for payment of damages, the making of the required survey and the acquisition of necessary rights of way. The last included limitations on the duties of the board of road viewers in those instances where such a board would still be appointed.

This brings us to the first of a series of "rubs" in this case. On the record before us we must conclude that the plaintiff's predecessor did not sign one of the agreements. That fact did not deprive the county court of power to widen Barger Drive by the resolution process; but in order for the county to acquire any part of the necessary property not subject to an agreement, the proceedings had to follow the method provided had the widening been undertaken by the petition method.

Without detailing that procedure, suffice it to say that at the very least a board of viewers would have had to have been appointed and *mailed* notice given to each record owner of land who had not signed an agreement. Furthermore, there would have had to have been furnished an opportunity for owners not agreeing to convey to have had damages assessed, and there would have had to have been a final order entered altering the road. Also, under *Latourette v. County Court,* 121 Or 323, 255 P 330 (1927), the resolution would have had to have contained a statement of "public necessity" as a "jurisdictional" prerequisite for the proceeding.

The record before us (including the resolution of the county court initiating the widening of Barger Drive which does not contain an *express* declaration of public necessity) shows the return on the posting of notices and a docket entry in the records of the county court stating simply, "Now at this time this matter came on

regularly to be heard and is hereby ordered established as a 50 foot right-of-way." There is no showing that the procedures for acquiring any land from plaintiff's predecessor were complied with.

The trial judge found the absence from the resolution of a statement of necessity to be a jurisdictional defect rendering the entire action of the county court "void," relying on the 1927 *Latourette* case. Keeping in mind that that case was decided prior to the amendment of § 100-1223, OCLA, by the addition of subparagraphs (e) and (f), I would have no hesitation in concluding that the trial judge was in error on that issue. After the 1927 case, and after the 1927 amendments, Clackamas County apparently once again tried to establish the road in issue in the 1927 case. The matter came back to the Supreme Court in *Latourette v. Clackamas Co.,* 131 Or 168, 281 P 182 (1929). The court in that case very plainly stated the effect of subparagraph (f):

> "[W]hen the title is not acquired by purchase or agreement with the owners of the land the county court is required to appoint a board of road viewers, who shall determine and assess the damages, taking into consideration the benefits of the road as so located." 131 Or at 173.

Proceeding then to examine the resolution adopted, the court found that it contained a statement of the reason for the change in the course of the road, the points between which the alteration in the old road would be made, the location of the center and exterior lines and a direction to the surveyor to post copies of the resolution "as required by law." The court also pointed out that the record showed that the county clerk had mailed notices to the landowners to be affected, including the plaintiff Latourette. It is not entirely clear that the court even recognized the rule in the 1927 *Latourette* case requiring a statement of necessity; but, assuming it did, it apparently found that statement in the reasons given for the straightening of the road. Similarly in this case I would find the

language in the resolution "All as agreed to by the property owners abutting on the said road" as a sufficient statement of necessity because it can fairly be implied that the court was satisfied that since all of the agreeing owners wanted the road widened that was enough reason to decide that it ought to be done. The fact that plaintiff's predecessor may not have joined in that request for the widening should not be enough to upset the 1952 action on the technical ground relied on by the trial court.

Under § 100-1209, OCLA, the only property owners entitled to *mailed* notice of the proceeding were those over whose land the road would run who had not signed the petition. Therefore it seems quite clear under § 100-1223, OCLA, that none of the owners who had signed agreements were entitled to mailed notice. Plaintiff's predecessor, having not signed an agreement, *was* entitled to mailed notice. None was given. Therefore there was a statutory and constitutional defect in the proceeding *as to the predecessor.* But the entire proceeding undertaken by resolution was not void—at least on the record before us—by reason of any failure by the county court properly to invoke its "jurisdiction" to widen Barger Drive. Section 100-1209, OCLA, as reformulated by Oregon Laws 1929, ch 103, § 1, makes it plain that a petition (of which a resolution is the functional equivalent under § 100-1223, OCLA) when duly posted permits the county court to proceed to acquire the property of petition signers (who are the functional equivalents of owners who have signed agreements) even if there is a failure to notify non-signers.

Furthermore, there was a final order entered by the county court establishing Barger Drive as a 50-foot right-of-way road. None of the signers of the agreements could have challenged that final order "upon appeal or review" (§ 100-1222, OCLA). That nothing appears in the record to indicate that the county ever formally enforced the agreements by taking conveyances from the property owners has nothing to do

with the validity of the procedure for the widening. Were that title issue now to be raised in some manner, it would be easily disposed of on the basis that the county had fully performed the agreement and was entitled to have the necessary conveyances. If need be, the ancient maxim that equity regards as done that which ought to have been done would take care of the problem.

Not so with respect to plaintiff and her predecessor in interest. Quite simply, the property of the predecessor in interest was not made subject to being taken for the widening of Barger Drive: no mailed notice was ever given, no board of viewers was ever appointed, and no proceedings were ever taken with respect to the property after the county court's "jurisdiction" was established. Neither did the county in any physical or metaphysical sense ever occupy the property, openly, notoriously or otherwise, until the defendant city began its project.

The question whether the present owner is barred from raising the issue now because of her predecessor's failure to seek a writ of review is a non-issue. On the record before us, the defendant city simply entered on property which it did not own. It did not own it because the county had never got beyond the stage of simply declaring its intention to take the property by resolution under § 100-1223, OCLA, and posting the notices. There was not a modicum of "like proceedings * * * as in the case of the filing of a petition before it."

It follows then that plaintiff's contention "that no actions of Lane County or Defendant City of Eugene have lawfully operated to widen the Barger Drive right-of-way" with respect to her property should have been sustained.

On the adverse possession and laches issues, the majority is correct.

Lee, Richardson and Gillette, judges, join in this specially concurring opinion.

**THORNTON, J.,** dissenting.

Contrary to the majority, I am of the opinion that plaintiff cannot at this late date maintain an action to recover possession of the five-foot strip fronting her premises. Briefly stated, plaintiff's action is barred by ORS 12.050, which provides:

> "An action for the recovery of real property, or for the recovery of the possession thereof, shall be commenced within 10 years. No action shall be maintained for such recovery unless it appear that the plaintiff, his ancestor, predecessor, or grantor was seized or possessed of the premises in question within 10 years before the commencement of the action."

Further, ORS 368.405(2) expressly recognizes the acquisition of public ways by adverse user.

As explained below the central flaw in the rationale of the majority and specially concurring opinions in my view is that both completely disregard Oregon decisions involving the doctrine of constructive occupancy in road cases, which I think are dispositive here. As a result each opinion ends up with an incorrect and equally untenable legal conclusion.

The essential facts are as follows:

(1) Lane County established Barger Drive as a 40-foot-wide county road in 1895. In 1952 the county court expanded it to a 50-foot-wide road by agreement of the abutting property owners, although the record does not show that plaintiff's predecessors in title actually signed the agreement. (2) Since 1952 the public has been in constructive, if not open, notorious and undisputed possession of the entire right of way under color of right, including the portion now claimed by plaintiff. (3) In 1966, Lane County surrendered jurisdiction of that portion of Barger Drive involved here to defendant City of Eugene. (4) Plaintiff purchased her property on contract in June 1967 and recorded her deed in July 1974. (5) According to the stipulated facts, neither plaintiff nor her predecessors in title asserted any claim to the strip until April 1975.

[ 327 ]

Based upon the above I conclude:

First, the taking possession by the county of the strip in issue under color of title, duly recorded in the County Court Journal, the boundaries being defined, was constructive notice to plaintiff's predecessor of the extent of the claim, making the occupancy of part include the occupancy of the entire designated width of the road. *Bayard v. Standard Oil Co.,* 38 Or 438, 63 P 614 (1901); *Swift v. Mulkey,* 14 Or 59, 12 P 76 (1886); *Joy v. Stump,* 14 Or 361, 12 P 929 (1887). *Accord: Nosler v. Coos Bay R.R. Co.,* 39 Or 331, 64 P 644 (1901); *Sweet et al. v. Irrigation Canal Co.,* 198 Or 166, 254 P2d 700, 256 P2d 252 (1953). *See also,* Annotation, *Width and boundaries of public highway acquired by prescription or adverse user,* 76 ALR2d 535 et seq (1961).

Second, notice to plaintiff's predecessors of the widening of Barger Drive is further shown by (a) the legal notices posted by the county prior to the road proceedings, (b) the county court's order establishing the road, (c) the moving back of the fences along the proposed new right of way on property which was adjacent to, although not directly abutting, the property in issue, and (d) the subsequent paving and expanded use of Barger Drive. This was adequate notice to plaintiff's predecessors that the five-foot strip in issue was about to be burdened with a public servitude unless they took proper action to prevent it. *See, Doyle Milling v. Georgia-Pacific,* 256 Or 271, 473 P2d 135 (1970).

Third, under Oregon law a public road may be established by adverse user of the public for the statutory period "independently of any supposed dedication." *Douglas Co. Road Co. v. Abraham,* 5 Or 318, 321 (1874); *Bayard v. Standard Oil Co., supra.* If the public may acquire an entire roadway by prescription, a fortiori, it may acquire a portion thereof in the same manner. A road which has been used by the public and maintained by the county for more than 10 years

becomes part of the county road system even though it has not been dedicated for road purposes. ORS 12.050 and 368.405(2); *Huggett et ux. v. Moran et ux.,* 201 Or 105, 266 P2d 692 (1954); *Ridings v. Marion County,* 50 Or 30, 91 P 22 (1907). According to *Huggett,* it is unimportant whether the right arising by prescription is based on a presumption of antecedent regular and lawful exercise of established authority or by prior dedication.

The conclusion is inescapable that the public has acquired a prescriptive easement over the five-foot strip in issue and that plaintiff's action is barred by ORS 12.050.

Therefore, I respectfully dissent.