Argued May 3, affirmed as modified August 11, 1971

MUZZY ET UX, *Respondents, v.* WILSON,
*Appellant,* ET AL, *Defendants.*

487 P2d 875

*Roy Kilpatrick,* John Day, argued the cause for appellant. On the briefs were Kilpatrick, Dayton & Matzen.

*Thomas M. Mosgrove,* John Day, argued the cause for respondents. On the brief were Yokom & Mosgrove.

Before MCALLISTER, Presiding Justice, and DENECKE, HOLMAN, TONGUE, and BRYSON, Justices.

McALLISTER, J.

This is a suit to quiet title to a strip of land in the city of John Day. Plaintiff is the owner of the record title. The defendant Helen Wilson claims a right of way over the land, either as a member of the public or as the owner of an easement. The trial court held that defendant had no rights in the disputed strip and quieted plaintiff's title. Defendant appeals.①

A fairly detailed statement of facts is necessary. We have prepared a map, similar to one used at the

---

① Other property owners in the area were made additional defendants. However, none of them contested plaintiff's right to a decree, and they have not appealed. Helen Wilson will be referred to as though she were the sole defendant.

Plaintiffs will also be referred to in the singular.

trial, to assist in following the history of the strip in question and other adjacent tracts. The two small tracts designated A and B on the map are the strip in dispute. Plaintiff owns tract 1, lying south of parcel A, and defendant owns tract 2, lying north of parcels A and B. The strip in dispute is about 18 feet wide where it abuts North Canyon Boulevard on the east. Other tracts in the area are numbered and labeled according to the current or most recent owners disclosed by the evidence.

All of the property on the map, which lies in the southeast portion of Block E of the original plat of the city of John Day, was at one time owned by Earl Brent. Brent acquired this land during the 1920's and 1930's and developed and resold it.

In 1932 Brent sold to Leo Gunther tract 1 which was used then and for some years thereafter as a service station. This is the lot now owned by plaintiff and is vacant at present.

In 1933 Brent had completed a commercial building on tract 4, the Brandli tract, and leased a portion of it to Frank Chester, who operated a grocery store there until about 1940. Mr. Chester testified that the back door to this store was near the northeast corner of the property, and that he used the disputed strip for access to that back door. He also testified that other businesses in the building used the strip.

In 1936 Brent sold tract 2 to Dr. Norris. The building on that lot, which Brent had built, lies within two or three feet of the south property line where it abuts parcel A. The building had, when Brent built and sold it, two doors on the south side, one in the part north of parcel A and one in the part north of parcel B. Dr. Norris lived in this building and had his office

there. Mr. Chester testified that some of Dr. Norris's patients used these south doors; the doctor had, according to Mr. Chester, a "pretty good traffic" coming into the building on the south side. This property is now owned by defendant.

Also in 1936 Brent sold tract 3, the Yokom tract, on which he had built a commercial building. By the terms of the conveyances from Brent, the owners of tract 2 and tract 3 have rights of way over the strip of land lying between their properties, labeled "Easement" on the map. This strip is 20 feet wide.

In 1940 Brent conveyed to Henderson a large parcel of land which included tracts 4, 6, 7 and 9, and parcels A and B. The record does not show when Brent sold tract 8, the small piece now owned by Wick. Parcel 8 is now occupied by a garage which opens on the south. The evidence also fails to show when Brent sold tract 5, now owned by Lemons. There is evidence, however, that he constructed the apartments which occupy the land and are indicated on the map by dotted lines.

Summing up the situation during the period of Brent's development of the area, we note that when he sold tract 1 to Gunther and tract 2 to Norris he retained title to a strip of land between these two lots and apparently made no provision in the deeds for use of the retained strip by the owners of those lots. At that time he owned a commercial building on tract 4, and his tenants used the strip for access to the back of that building. After Dr. Norris purchased tract 2, some of his patients used the strip and there is no evidence of any objection to this use. Mr. Chester testified that during this period there was a visible road over the strip in dispute.

In 1940, when Brent sold tract 4 and other property to Henderson, he conveyed to Henderson the title to the disputed strip. The deed to Henderson makes no reference to any rights of way over the land, and warrants that the property is free of all encumbrances.

In 1948, defendant's husband, Gordon Wilson, purchased tract 2. Mrs. Wilson testified that the building had been used, prior to its purchase by Mr. Wilson, as a residence. The evidence does not disclose when Dr. Norris ceased to practice in the building, or what other uses it may have had until defendant's husband purchased it and used it as his law office. We conclude from Mr. Chester's testimony that Dr. Norris occupied the building at least until 1940. The record contains no information about the use of the building or its ownership during the period from 1940 to 1948.

In 1962, the property which Brent had sold to Henderson was conveyed, with the exception of tract 4, to Swanner and Hansen. The deed includes the disputed strip. In the description of tract 4 as an exception to the property conveyed, the deed refers to the north line as going along an alley. As will be seen from the map, the north line of tract 4 is adjacent to parcel B of the disputed strip, and to its extension on the west designated as tract 9.

By mesne conveyances parcels A and B and tracts 6, 7, and 9 were conveyed to Ledgerwood. In 1966, Ledgerwood conveyed the property to Wick. The deed to Wick employed a new description which did not encompass tract 4; there was, therefore, no need to describe tract 4 as an exception, and the new description contains no reference to an alley. There is, however, an exception to the covenant against encumbrances, for "that certain easement from S. E. Hender-

son and Dorothy K. Henderson, husband and wife, a co-partnership, to Gordon Wilson and Leo Gunther, dated January 12, 1950, and recorded March 5, 1956, in Book 74, Page 156, Deeds, Grant County, Oregon." The easement is not described in the Ledgerwood deed. The original document granting the easement was not introduced into evidence, and none of the witnesses, including the title examiner called by plaintiff, mentioned this recorded easement. Nothing in the evidence discloses whether this easement covers all or part of the property in dispute, what its purpose was, or whether it ever was or is now appurtenant to defendant's land.

On October 11, 1968, Wick conveyed tracts 6, 7 and 9, and parcel B of the disputed strip to Elledge and Pollock, subject to the recorded easement from Henderson to Wilson and Gunther. On October 17, 1968, Wick conveyed parcel A to plaintiff in consideration of permission from plaintiff for Wick to erect a sign on plaintiff's property. The deed conveys parcel A "Subject to the rights, if any of the public or common owners of abutting property to the use of the land above described."

Some time after this conveyance, plaintiff sought to obtain from defendant a deed to the same parcel. Defendant refused to execute such a deed, and on March 3, 1969, plaintiff filed his complaint in this suit praying that his title to parcel A be quieted.

In April of 1969 Elledge and Pollock conveyed tract 9 and parcel B to Lemons, subject to the recorded Wilson and Gunther easement. In June plaintiff purchased parcel B from Lemons for $500; his deed states that the conveyance is subject to the recorded Wilson and Gunther easement. When this case came to trial

plaintiff filed an amended complaint, adding parcel B, and praying that his title to both parcels be quieted.

Defendant has pleaded two alternative theories upon which she bases her alleged right to use the disputed strip for ingress and egress to her property. The first theory is that the strip has been dedicated to the public as a roadway. The second is that she has an easement over the strip by prescription, obtained by the use of herself and her predecessors in interest for a period of more than ten years. We think defendant has failed to carry her burden of proof on both theories.

Dedication was defined as follows in *Harris v. St. Helens,* 72 Or 377, 386, 143 P 941 (1914):

"* * * Dedication is an appropriation of land to a public use, made by the owner, and accepted for such use by or on behalf of the public. A dedication may be *express,* as when the intention to dedicate is expressly manifested by a deed or an explicit oral or written declaration of the owner, or some other explicit manifestation of his purpose to devote the land to public use. An *implied* dedication may be shown by some act or course of conduct on the part of the owner from which a reasonable inference of his intent may be drawn, or which is inconsistent with any other theory than that he intended a dedication. * * *"

There is no evidence of express dedication in this case. In order to prevail on a theory of implied dedication defendant must prove that the owner intended "to devote his property to a *public* use, *and this intention must be clearly and unequivocally manifested by his acts.*" 72 Or at 388. We have recently reaffirmed this formulation of the burden of proof. *Miller v. Roy W. Heinrich & Co.,* 257 Or 155, 476 P2d 183 (1970). In *Security and Investment Co. v. Oregon City,* 161 Or

421, 433, 90 P2d 467 (1939), the opinion stresses, in similar language, the importance of proving a clear and unequivocal manifestation of an intent to devote the property to a public use, and then states:

"* * * In some jurisdictions where the intention to devote land to a public use is doubtful, such doubt is resolved against the donor, but such is not the rule in this state."

See, also, on the central importance of the donor's intent, *State ex rel Thornton v. Hay,* 254 Or 584, 592, 462 P2d 671 (1969); Parks, *The Law of Dedication in Oregon,* 20 Or L Rev 111, 118-122 (1941). The circumstances may be such, however, that the law will imply an intent, or will regard the owner's actions as sufficient to constitute a dedication regardless of his actual intent:

"It is essential that the donor should intend to set the land apart for the benefit of the public. Such intent is not a secret one, but is that which is expressed in the visible conduct and open acts of the owner. If the open and known acts of the donor are of such a character as to induce the belief that he intended to dedicate the way to public use, and the public and individuals act upon such conduct and proceed as if in fact there had been a dedication and acquire rights which would be lost if the owner were allowed to reclaim the land, then the law would not permit him to assert that there was no intent to dedicate no matter what may have been his secret intent. * * *" *Portland Ry., L. & P. Co. v. Oregon City,* 85 Or 574, 583-584, 166 P 932 (1917).

1, 2. The necessary intent must be to dedicate the property to a *public* use. *Harris v. St. Helens,* supra, 72 Or at 388; 4 Tiffany, The Law of Real Property 333-334, § 1099 (3d ed 1939); 11 McQuillin, The Law of Municipal Corporations 651, § 33.08 (3d ed rev. 1964).

We are unable to find evidence of any act or course of conduct on the part of Earl Brent, who developed and laid out the land in this area, which would clearly indicate an intent that this land be open to public use. This strip of land was used by Brent's tenants in the Brandli building for access to their back doors both before and after he conveyed tracts 1 and 2 on either side of it. He conveyed the fee to the strip when he conveyed tracts 4, 6, 7 and 9 to Henderson in 1940 by a deed that makes no mention of public rights in the strip. The strip does not provide a means of traveling through the block to another street or alley, and is not part of the natural public traffic pattern. At most, the circumstances of Brent's ownership and development of the land suggest an intent that all of the owners of land in this area have the right to use this strip for access to their property.[2] Such a use by private persons in connection with the use of their own property is not a public use. *City of Scottsdale v. Mocho,* 8 Ariz App 146, 444 P2d 437, 441-442 (1968); *Hofgesang v. Woodbine Avenue Realty Company,* 414 SW2d 580, 585 (Ky 1967); *Town of Eunice v. Childs,* 205 S2d 897, 899 (La App 1967); *Shia v. Pendergrass,* 222 SC 342, 72 SE2d 699, 701-702 (1952); *First Church of Christ, Scientist v. Revell,* 68 SD 377, 2 NW2d 674, 677 (1942).

3. Finding no evidence of an intent on the part of Brent to dedicate this property to public use, we examine next the actions of Brent's successors in title

---

[2] Defendant has not raised the theory of easement by implied grant, a theory which the facts of this case would seem to suggest. See Dressler et al v. Isaacs et al, 217 Or 586, 343 P2d 714 (1959) and Jack v. Hunt et ux, 200 Or 263, 264 P2d 461, 265 P2d 251 (1954) for discussions of easements by implication. Because this theory was not presented to the trial court or argued in this court, we have not considered it.

to the disputed strip, especially Hendersons to whom Brent conveyed the property in 1940. There is virtually no evidence of the actual use which was made of this strip between 1940 and 1948. After 1948 there is evidence of use by the owners and tenants of defendant's property, tract 2, and by tenants of the Brandli property, tract 4. The record does not show when Hendersons sold tract 4. As we have pointed out when Hendersons in 1962 conveyed to Swanner & Hansen the deed excepted tract 4 by a description which referred to the north boundary of tract 4 as an "alley." Although defendant has made no point of this in her argument, we have considered the possibility that this might indicate a dedicatory intent on the part of Hendersons. The reference is simply to an alley; it is not described as either public or private. Some courts have said that the word "alley," unless qualified by the word "private," will be construed to mean a public alley unless the context requires otherwise. In most such cases, however, the general context in which the word was used strongly suggested that public alley was the intended meaning.[9] There is no such suggestion in the mere reference in a deed to an alley as a boundary. Private alleys are not uncommon, and we cannot assume from the mere use of the word under the circumstances of this case that Hendersons had dedicated their property to the use of the public. See *Cohen v. Board of Trustees of Immanuel Baptist Ch.,*

[9] White v. Meadow Park Land Co., 213 SW2d 123, 125 (Mo App 1948) ("alley for the use of the public"); Bellevue Gas & Oil Co. v. Carr, 61 Okla 290, 161 P 203, 204 (1916) (allegation, in action against town, that plaintiff sustained injury while traveling along alley connecting two streets of the town); Payne v. Godwin, 147 Va 1019, 133 SE 481, 483 (1926) (recorded plat). *But see* Moon v. Jones, 101 Ga App 79, 113 SE2d 159 (1960); Talbert v. Mason, 136 Iowa 373, 113 NW 918, 920 (1907).

276 SW2d 26 (Ky 1955) ; *Flaherty v. Fleming,* 58 W Va 669, 52 SE 857, 859 (1906).

The owners of the disputed strip have never objected to the uses made of it by others. However, the uses shown by the evidence were all related to the properties in the immediate area. No general public use was shown. The evidence does not show any action or inaction on the part of the owners of this land which indicates an intention to dedicate it to public use.

Defendant has also failed to prove that she or her predecessors in title have acquired an easement by prescription. The evidence of use of the strip by the owners and tenants of tract 2 is too fragmentary and uncertain to prove adverse use for the statutory period. Mr. Chester testified that between 1936 and about 1940 Dr. Norris's patients entered the building through the doors that opened onto this strip. There is no evidence about the ownership or use of tract 2 between 1940 and 1948, when defendant's husband purchased it, except that at the time of that purchase it was being used as a residence. Defendant's husband had his law offices in the building until his death in 1966. We quote in full defendant's testimony about her husband's use of the property in dispute:

"Q   Now, you have driven around that building, I suppose?
"A   Yes.

"Q   Did you ever drive around it with your husband?
"A   Yes. Many times.

"Q   You mean, he went around that building?
"A   Many times.

"Q Now, how do you know that?

"A From seeing him go around, and from being with him.

\* \* \* \* \*

"A Well, there was a time when he parked right—It used to be that the front entrance to his office, the main entrance to the office building, was right about in the center of that north side. But there was an indentation, as I say, where the garage was [at the northwest corner of the building] ; and he mostly parked at that—in front of that garage, which was towards the back of the building. And then he would go on around from there."

4. At some time during Mr. Wilson's ownership of the building, the south or southeast portion was rented by a beauty shop and then by a barber shop. The entrance for their customers was located near the southeast corner of the building and this use, the duration of which we do not know, would have involved a portion only of parcel A. If defendant has shown a continuous and adverse use of the entire strip for the prescriptive period, it must be through her testimony which we have quoted above. She had the burden of showing adverse use for a period of ten years. In adverse possession cases we have required that the proof be "clear and positive." See *Scott v. Elliott,* 253 Or 168, 178, 451 P2d 474 (1969) and cases there cited. Testimony that defendant and her husband drove over the land "many times" is too vague and general to support a holding that they thereby acquired a permanent right of way.

5. The trial court was correct in holding that defendant had not shown that she or the general public had any right to use the property in question as a roadway. The decree quieting plaintiff's title should, however, be modified in one particular. A number of the

deeds in evidence contain reference to a recorded easement granted by Hendersons to Wilson and Gunther. We do not know what sort of an easement was granted, but it is probable that it involves all or part of the strip in question. The trial court's decree should have provided for whatever rights were granted by that instrument. The decree is modified to provide that plaintiff's title be quieted, subject to any rights defendant may now have by virtue of an easement granted by the instrument recorded in Book 74, Page 156, Deed Records of Grant County. In all other respects the decree of the trial court is affirmed.