Argued and submitted December 6, 1982, reversed and remanded April 24, 1984

## WILLIAMS et al,
*Respondents on Review,*

*v.*

## HARRSCH et al,
*Petitioners on Review.*

(TC 80-07-7839, CA A21608, SC 28852)

681 P2d 119

William D. Cramer, Burns, argued the cause for Petitioners on Review. With him on the briefs was Cramer and Pinkerton, Burns.

Claud A. Ingram, Salem, argued the cause for Respondents on Review.

Before Lent, C. J.**, and Linde, Peterson***, Campbell, Roberts and Carson, Justices.

CARSON, J.

** Chief Justice when case argued.
*** Chief Justice when decision rendered.

## CARSON, J.

This is an action in equity to establish two roadway easements across defendants' land.[1] Plaintiffs claimed public as well as private easements, on the alternative theories of reservation, implication and prescription.[2] Defendants petitioned for review of the Court of Appeals' opinion affirming a decree which effectively declared that the public and plaintiffs have a right to one of the claimed easements by prescription.[3] *Williams v. Harrsch,* 58 Or App 301, 648 P2d 386 (1982).

Plaintiffs and defendants own adjoining tracts of land in a rural part of Harney County, Oregon. Specifically, plaintiffs own the south half and defendants own the north half of Section 11, Township 25 South, Range 33 East, of the Willamette Meridian. The two claimed roadway easements run north to south, from the county road which forms the northern boundary of Section 11, across defendants' property to plaintiffs' land. The easement granted by the trial court runs along the eastern boundary of the north half of Section 11; the other claimed easement (denied by the trial court) runs parallel to the claimed eastern boundary easement, about three-eighths of a mile to the west. Only the former claimed easement is at issue in defendants' appeal and petition for review.

Prior to 1963, all of Section 11 was owned by Meadowland Ranches, Inc. (Meadowland). At that time Section 11

---

[1] For clarity and because the case does not require otherwise, defendants-appellants Harrsch will be referred to herein as "defendants."

[2] Plaintiffs also alleged a claim for compensatory and punitive damages because access to their land was made more burdensome. Defendants counterclaimed for damages incurred when John Williams allegedly assaulted Joseph Harrsch and for equipment rentals and repairs. The trial court denied plaintiffs' claim for damages and defendants' counterclaim for equipment rentals, but awarded defendant Joseph Harrsch $100 general and $500 special damages based on the assault. Plaintiffs did not cross-appeal and defendants did not appeal the denial of defendants' claim for equipment rentals. Consequently, none of these claims is at issue in defendants' appeal or petition for review.

[3] The trial court's memorandum opinion specifically denies plaintiffs a private easement by prescription across defendants' land because the 10-year prescriptive period was not established. Plaintiffs did not acquire the property until 1976 and there was no evidence of prescriptive use by the previous owners to tack onto plaintiffs' use. The decree, however, states: "* * * the public and the plaintiffs have acquired an easement along the east boundry [sic]" of defendants' land. The only sensible reading of the decree is that the trial judge meant that plaintiffs, as members of the public, have a public easement across defendants' land.

was unimproved, unenclosed, sagebrush-covered range land. Meadowland partitioned the section into various-sized parcels for sale. In the deeds of sale to all Section 11 purchasers, Meadowland reserved a 40 foot easement along all parcel boundaries for public highway purposes, reserving the power to dedicate or convey them as such.[4] There was no evidence that they were ever so dedicated or conveyed.

Between 1963 and 1967 Juarezes purchased from Meadowland the easterly 120 acres of the northeast one-quarter, which land included the claimed easement. In 1976 and 1977 plaintiffs purchased the two parcels that together comprised the south half of Section 11 from two different parties who had each previously purchased their parcels from Meadowland. In 1978, defendants purchased all of the north half of Section 11, except the portion owned by Juarezes. Thus, by 1978 plaintiffs owned the south half and defendants and Juarezes owned the north half of Section 11. In 1980, defendants acquired Juarezes' property, making them the sole owners of the north half of Section 11.

From 1978 until 1980, plaintiffs and defendants were friendly neighbors who cooperated in the exchange of labor and farm equipment. In 1980, when defendants purchased Juarezes' property, they moved the east boundary of their fence to the east edge of the north half of Section 11 and placed a gate across the east roadway, informing plaintiffs that the road was on defendants' property. Defendants did not prevent plaintiffs' use of the roadway but expressly informed them that their use was permissive. Plaintiffs asked that the gate be removed, asserting their right to travel on the roadway without obstruction. An argument and fistfight between Joseph Harrsch and John Williams ensued. Plaintiffs continued to use the roadway and, later in 1980, sought a declaration of rights in two easements and damages for interference with the easements. Defendants counterclaimed

---

[4] The deeds of conveyance from Meadowland all contained the following reservation:

"Reserving therefrom an easement of forty feet (40 feet) along all boundaries for public highway for use in common with others, with power to dedicate * * * and reserving to the Seller the sole right to convey the rights hereby reserved."

for damages from the fistfight and the labor and machinery exchange.

After a bench trial, the trial court decreed that no easement existed under any theory at the claimed position three-eighths of a mile west of the eastern boundary, but that the public and plaintiffs had acquired an easement by prescription along the eastern boundary of the north half of Section 11. The Court of Appeals tried the case anew upon the record and held that plaintiffs had met their burden of proving that they and the public were entitled to an easement by prescription along the eastern boundary of defendants' property. The Court of Appeals found the width of the easement to be 40 feet and so modified the decree.

In their petition for review to this court, defendants raised several issues.[5] Because we resolve this case in favor of defendants on the facts and because the other issues were not adequately raised to the trial court, those other issues will not be considered here. The sole issue before this court is whether plaintiffs have met their burden of proving that a public easement was created by prescription along the eastern boundary of defendants' property. We conclude that this

---

[5] Defendants contended for the first time on appeal that in order to establish a public roadway easement, there must be a direct or implied dedication by the landowner and also a direct or implied acceptance of the dedication by responsible public authorities or the public, citing *Huggett v. Moran*, 201 Or 105, 266 P2d 692 (1954). Defendants also argued that upholding the grant of a public easement is the same as establishing a county road, meaning that Harney County would be forced to maintain this short road for plaintiffs' benefit.

Defendants also argued for the first time on appeal that ORS 105.677 is applicable to this case. ORS 105.677 (effective October 5, 1973) provides:

"(1) An owner of land who either directly or indirectly invites or permits any person to use his land for any recreational purpose without charge shall not thereby give to such person or to other persons any right to continued use of his land for any recreational purpose without his consent.

"(2) The fact that an owner of land allows the public to recreationally use his land without posting or fencing or otherwise restricting use of his land shall not raise a presumption that the landowner intended to dedicate or otherwise give over to said public the right to continued use of said land.

"(3) Nothing in this section shall be construed to diminish or divert any public right acquired by dedication, prescription, grant, custom or otherwise existing before October 5, 1973."

burden has not been met. We therefore reverse the Court of Appeals.[6]

In order to establish a roadway easement by prescription, plaintiffs must establish open and notorious use of defendants' land adverse to the rights of defendants for a continuous and uninterrupted period of 10 years. *Thompson v. Scott,* 270 Or 542, 546, 528 P2d 509 (1974). Easements by prescription are not favored by the law. *Wood v. Woodcock,* 276 Or 49, 56, 554 P2d 151 (1976). Claimants of a prescriptive right must make out their case by clear and convincing evidence. *Thompson v. Scott, supra,* 270 Or at 547.

Where a public easement is alleged, the additional element of use by the general public must also be proven by clear and convincing evidence. *Muzzy v. Wilson,* 259 Or 512, 522, 487 P2d 875 (1971). In *Muzzy,* the use of a strip of land that provided access to abutting property owners but not access to another street or alley and which was not part of a public traffic pattern was held to be insufficient to establish a general public use. "Such a use by private persons in connection with the use of their own property is not a public use." *Muzzy v. Wilson, supra,* 259 Or at 520.

Likewise, in *Stotts v. Dichdel,* 70 Or 86, 139 P 932 (1914), use of a crude mountain road sparingly traveled for 30 years by families residing in the neighboring foothills was held not to create a public highway. So, too, in *Doyle Milling v. Georgia-Pacific,* 256 Or 271, 473 P2d 135 (1970), this court found no public easement where the use of a road was for a dominant estate, for the specific purposes of farming and operating a mill. The use of the road by tradesmen and other business invitees did not create a public road.

"The point at which the use made of a road becomes so expansive that it becomes a public road is, of course, a question of degree. If it is contended, as defendant contends here, that the public way arose through prescriptive use, then certainly the use must be of such a character that the landowner is adequately apprised of the nature of the assertion being made so that he will know that his land will be

---

[6] Because we hold that plaintiffs have not met their evidentiary burden of proving that a public easement was created by prescription, we need not reach defendants' contentions regarding the width and scope of the alleged easement nor their objections to the granting of costs to plaintiffs as the prevailing party.

burdened by a public servitude unless he takes proper action to prevent it." *Doyle Milling v. Georgia-Pacific, supra,* 256 Or at 279.

■　　　To establish a public roadway by prescription the use must be adverse or under a claim of right and not merely by permission of the landowner. *Parrott v. Stewart,* 65 Or 254, 260, 132 P 523 (1913). Adequate notice to the landowner of a pervasive public claim in the use of the road is required. *Doyle Milling, supra,* 256 Or at 279.

■　　　We now turn to a new examination of the evidence in this case. ORS 19.125(4). The familiar elements which must be shown to prove a public prescriptive roadway easement are: open and notorious use by the general public, under a claim of right, which is continuous and uninterrupted for 10 years.

The testimony at trial was confusing, in part because at various times several roads transversed Section 11. The testimony regarding possible public use before 1963 was so vague that it carried little weight.[7] Two neighbors, a father and son, who owned land adjoining Section 11, testified that Meadowland bladed a roadway along the eastern boundary of Section 11 in 1963 or 1964 to allow access to prospective buyers in order to promote sales of the acreages.[8] They testified that prospective land buyers used the roadway from 1963 or 1964 to 1967. At this time, however, Meadowland still owned most of the land in Section 11 bordering the roadway, so any travel on the claimed easement by prospective buyers would have been permissive. Tony Juarez testified by deposition that the roadway was not bladed until sometime after 1968. The road was described as a narrow, unimproved dirt road running across unfenced range land. It ran north to south

---

[7] Plaintiff testified that the remains of a stone foundation and a windmill foundation on his property indicate that a private residence once existed near the claimed eastern roadway easement. Although there was no testimony as to when these structures existed, plaintiffs argued that the public used this roadway to reach that private residence. Whether this use would rise to the level of use by the general public and not just by the occupiers and their invitees is unclear from the sketchy testimony. There was no testimony that these structures existed after 1963. There was also vague testimony that the road may have been used to access a garbage dump on Section 12 many years before. This testimony was also too indefinite to be accorded much weight.

[8] The term "bladed" was used by the parties and, in the context of this case, means to remove sagebrush and rocks with machinery having a blade, in order to create a passable roadway.

for about five-eighths of a mile and dead-ended at the railroad tracks which transversed plaintiffs' south half section. The road was impassable in bad weather and partially overgrown with sagebrush.

Before 1976 the use of the roadway was, at best, sporadic. The only testimony of use by the general public between 1963 and 1976, when plaintiffs moved onto their land, was by the same two adjoining neighbors and their testimony was vague and ambiguous. One neighbor testified that he used the roadway for rabbit hunting and arrowhead hunting approximately once a year since 1963 or 1964. He also testified that based on car tracks he had observed on the road, he surmised that tourists used the road for rabbit and arrowhead hunting. This neighbor's son testified that he also had used the roadway at least once a year since 1963 or 1964.

After 1976, when plaintiffs purchased and moved onto the south half of Section 11, the claimed easement was used more frequently, both by plaintiffs and their visitors. Plaintiffs testified that they used this roadway (among others) as an access to their property. The same two neighbors and plaintiffs testified to sporadic use of the claimed roadway easement after 1976 to dig two or three wells and build fences. Such sporadic use by a few individuals in connection with their own property does not amount to a public use. This use might be some evidence of adverse use to establish a private easement, but as previously noted, such use by plaintiffs and their invitees did not begin until 1976 and was foreclosed in 1980 by defendants' placement of a gate across the roadway and their announcement that plaintiffs' passage was by permission. Because there was no evidence of prescriptive use by the previous owners to tack onto plaintiffs' use, the requisite 10-year period was not met to establish a private easement.

From the evidence at trial, the period in which a claim of public prescriptive use could be established is from 1963 or 1964 to 1980. The evidence of public use between 1963 and 1980, apart from plaintiffs' use, was testimony from the two neighbors that they used the road for occasional rabbit and arrowhead hunting. They testified that they surmised that members of the public also used the road for those purposes, but they offered no specific evidence as to frequency or actual use of the road by the general public. The only other

evidence of adverse use between 1963 and 1980 was testimony by plaintiffs that after 1976, when they moved onto their south half section, they and their invitees used the road as an access to plaintiffs' property. This latter use by plaintiffs and their invitees is use by a few individuals in connection with their adjoining property and does not rise to the level of use by the general public.

Considering all the evidence anew upon the record, plaintiffs have not met their burden of proving by clear and convincing evidence a continuous adverse public use for the requisite prescriptive period.

■ We thus hold that because the evidence of adverse use by the general public is vague, and the only specific evidence of use is by a few individuals in connection with their adjoining property, plaintiffs have not met their burden of proving by clear and convincing evidence that the public and plaintiffs are entitled to a roadway easement by prescription across defendants' land.

Reversed and remanded.