Argued and submitted December 11, 2000, reversed January 17, 2001

James G. PETERSEN
and Peggy M. Petersen,
*Appellants,*

*v.*

CROOK COUNTY,
*Respondent,*

*and*

Paul ROWAN,
Hattie Marie Vaughan, Harry Vaughan,
Alvyne R. Leonard and Stan E. Leonard,
*Intervenors - Respondents.*

CROOK COUNTY,
*Counterclaim - Plaintiff,*

*v.*

James G. PETERSEN
and Peggy M. Petersen,
*Counterclaim - Defendants.*

(97 CV 0010; CA A106446)

17 P3d 563

Ken Brinich argued the cause for appellants. With him on the briefs was Hendrix & Brinich, LLP.

Peter Schannauer argued the cause and filed the briefs for respondent Crook County.

No appearance by intervenors - respondents.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Plaintiffs appeal from a judgment declaring the existence of a public prescriptive easement in favor of defendant Crook County (the county) and private prescriptive easements in favor of intervenors along a portion of a roadway crossing plaintiffs' property. On *de novo* review, we reverse.

The testimony at trial often was vague and confusing. We summarize the most persuasive evidence as follows. Plaintiffs own and reside on rural property near Prineville that they purchased in 1991. A graveled roadway of about 15 feet in width, known as Peppermint Lane, crosses plaintiffs' property along its northern boundary. Plaintiffs use the road for access to their property. The road has existed for many years and was not constructed by any party to this action. Witnesses who were familiar with the portion of the road crossing plaintiffs' property from the 1970s to the present described it as "washboardy" or "corduroy." To the east of plaintiffs' property, the road is wider and in better condition. The road ends to the east at its intersection with McKay Road, a county-maintained public road. The easternmost portion of Peppermint Lane was dedicated to the public in 1994. To the west of plaintiffs' property, Peppermint Lane is a paved road that was dedicated to the public in 1975. Intervenors Leonard and Vaughn own property abutting that portion of Peppermint Lane. The road ends to the west at the boundary of private property owned by the Smiths.[1]

An express roadway easement 30 feet in width runs along the northern boundary of plaintiffs' property. That easement was created in 1962 by a recorded instrument for the benefit of the property currently owned by the Smiths. At the northwest corner of plaintiffs' property, Peppermint Lane intersects with Rollo Road, another paved public road. Rollo Road runs south from that intersection and serves a developed subdivision of 27 parcels known as West Hills. Rollo Road ends to the south at West Hills Road, which, like Peppermint Lane, runs east to west, ending to the east at McKay Road. The configuration of portions of Peppermint

---

[1] The Smiths are not parties to this action.

Lane, Rollo Road, and West Hills Road thus creates what amounts to a loop, with access to McKay Road at two points.

Many people have used the portion of Peppermint Lane crossing plaintiffs' property throughout the years, with varying degrees of frequency. Each of the intervenors has used the road, as have the Smiths, residents of the West Hills subdivision, various tradespeople, and public entities. The general public also has used the road, but the extent and frequency of that use is unclear.

In 1994, the Crook County Planning Commission approved the Fuller Subdivision. That subdivision abuts the easternmost portion of Peppermint Lane to the south. When the subdivision was approved, the county accepted a dedication of the portion of Peppermint Lane that is contiguous to the subdivision. To the immediate west of the Fuller Subdivision and to the immediate east of plaintiffs' property, Peppermint Lane crosses property owned by intervenor Rowan. In 1994 or 1995, as part of an effort to convince the county to accept the entire length of Peppermint Lane as a public road, Rowan widened and improved the road fronting his property. He reduced the steepness of the road grade and excavated a crown on a hill located near the boundary of his property and plaintiffs' property. He did not, however, reduce the grade on the west side of the hill located on plaintiffs' property, nor were any improvements done on the portion of the road crossing plaintiffs' property. Despite Rowan's efforts, the county declined to accept the portion of Peppermint Lane crossing plaintiffs' property.[2]

The effect of Rowan's improvements was to increase the use of Peppermint Lane and to increase the speed of vehicles traveling on it. The road became more rutted and dusty due to the increased use. In addition, some drivers approaching the hill from the east apparently assumed that the road was gently sloped and of uniform width on its west side, only to discover that was not so when they crossed the crest of the hill. Therefore, after 1994 or 1995, plaintiffs became more

---

[2] Although the record is not entirely clear, it appears that, at some point the portion of the road crossing Rowan's property may have been dedicated to the county.

concerned about the speed and frequency of traffic and other problems associated with greater use of the road.

In 1997, plaintiffs filed this action seeking to quiet title to the portion of Peppermint Lane crossing their property. The county and intervenors filed counterclaims asserting public and private rights to use the road based on various theories. The trial court granted summary judgment to plaintiffs on their quiet title claim, leaving the counterclaims for trial. At trial, the court concluded that intervenors were entitled to prescriptive easements and that the county had established a public prescriptive easement along the disputed portion of the road.[3] Plaintiffs appeal from the ensuing judgment.

■ Easements by prescription are not favored by law. *Wood v. Woodcock*, 276 Or 49, 56, 554 P2d 151 (1976). In order to establish a private prescriptive easement, a claimant must show, by clear and convincing evidence, an open and notorious use of land adverse to the rights of the servient owner for a continuous period of 10 years. *Thompson v. Scott*, 270 Or 542, 546, 528 P2d 509 (1974). Where a public prescriptive easement is alleged, the additional element of use by the general public also must be proved by clear and convincing evidence. *Williams v. Harrsch*, 297 Or 1, 6, 681 P2d 119 (1984). The use of the road by private persons in connection with the use of their property is not a public use. *Muzzy v. Wilson*, 259 Or 512, 520, 487 P2d 875 (1971). Likewise, the use of the road by invitees of such persons does not create a public road. *Doyle Milling v. Georgia-Pacific*, 256 Or 271, 278, 473 P2d 135 (1970). On appeal, several issues relating to the foregoing principles are in dispute, but one is dispositive. For reasons explained below, we agree with plaintiffs that there was insufficient evidence to establish that any use of the road by intervenors or the public was adverse.

■ ■ We must first consider two assignments of evidentiary error. Plaintiffs first complain that the trial court erroneously admitted hearsay testimony from Leonard to the

---

[3] The county cross-assigns error to the trial court's failure to declare the existence of a public road by estoppel or dedication. We reject that cross-assignment without discussion.

effect that one of plaintiffs' predecessors, Hudspeth, told him that Peppermint Lane was a public road. The trial court admitted the evidence as a statement against Hudspeth's interest under OEC 804(3)(c). The county concedes—and we agree—that the court's reasoning was erroneous, because there was no evidence that Hudspeth was unavailable to testify. OEC 804(3). Therefore, plaintiffs assert, we must disregard that testimony on *de novo* review. Plaintiffs are correct, but only to a point. On cross-examination by plaintiffs' attorney, Leonard testified without objection that Hudspeth "always did think that [Peppermint Lane] was a public road." Although we disregard the hearsay testimony to which plaintiffs did object, we do consider, for any weight that it may have, the hearsay testimony elicited from Leonard by plaintiffs on cross-examination. *See James v. General Motors of Canada, Ltd.*, 101 Or App 138, 146 n 4, 790 P2d 8, *rev den* 310 Or 243 (1990).

Next, plaintiffs assign error to the trial court's reliance, in its letter opinion, on two deeds apparently within plaintiffs' chain of title and to the court's characterization of testimony from one of plaintiffs' immediate predecessors in interest, Rinehart.[4] The deeds were part of the summary judgment record involving plaintiffs' quiet title claim but were not received in evidence in the trial of the easement-related counterclaims. In its written opinion, the trial court stated:

> "The deed from Hudspeth to Rinehart and the deed from Rinehart to [plaintiffs] excepted 50' for an easement. This placed plaintiffs on inquiry notice of the public's right. The language of the deed evidences an intent to dedicate the land to the public. This is further supported as Mr. Hudspeth and Mrs. Rinehart both expressed their belief that the road was public * * *."

The county argues that the trial court took judicial notice of the deeds and that it was entitled to do so because they were part of the court file in the action. It is true that any evidence concerning court records that can properly be noticed will be judicially noticed as a verifiable fact under OEC 201(b). *See* OEC 202(5). The county's position is curious,

---

[4] Rinehart and her husband acquired the property from Hudspeth.

however, because it took the position in a post-trial hearing that the court was *not* required to take judicial notice of the deeds, because they were part of the summary judgment record.[5] To confuse matters further, there is no suggestion in the record—apart from the foregoing statement in its opinion—that the trial court actually decided to take judicial notice of the deeds.

■ Leaving those procedural anomalies aside, the county fails to appreciate that establishing the *existence* of the records does not demonstrate the truth of everything they *contain*. As the leading commentator on Oregon evidence has aptly stated:

> "A distinction must be drawn between noticing the existence of court records or information in court records and noticing the truth of that information. The fact that certain records or entries exist or certain statements were made may be indisputable. However, the truth of those statements may be disputable, and hence will not be subject to judicial notice." Laird C. Kirkpatrick, *Oregon Evidence*, 47 (3rd ed 1996).

If the trial court took judicial notice of the deeds, we cannot discern the purpose for which judicial notice was taken.

■ In any event, the trial court's understanding of the significance of the deeds does not withstand scrutiny. The court described the deeds as "excepting" a 50-foot "easement." Such an exception would not, however, show an intent to dedicate Peppermint Lane to the *public*. In fact, the overwhelming evidence is that no dedication of the portion of the road crossing plaintiffs' property has ever occurred. The county declined to accept the disputed portion of the road as recently as 1994. Nor would such an exception create any *prescriptive* easement in favor of anyone. It would be no more than an exception to the grantor's warranty of marketable title. *State ex rel Dept. of Trans. v. Tolke*, 36 Or App 751, 759-61, 586 P2d 791 (1978), *rev den* 286 Or 149 (1979). Beyond that limited significance, there is no evidence explaining the nature and purpose of any such exception. Thus, the trial

---

[5] The county abandons that argument on appeal.

court's consideration of the deeds is of little assistance in the analysis of the prescriptive easement claims.

■ We also agree with plaintiffs that the trial court misunderstood the testimony of Rinehart. She did not testify that she believed Peppermint Lane was a public road. She merely testified that her husband told her that the county had decided not to pave the road. That testimony is susceptible to any number of inferences having nothing to do with the ownership of the road when her husband made the statement or, for that matter, at any other time.

■ With the foregoing evidentiary limitations in mind, we consider the decisive question on appeal, namely, whether the evidence clearly and convincingly established adverse use of the road by intervenors or the public. In *Woods v. Hart*, 254 Or 434, 437, 458 P2d 945 (1969), the Supreme Court wrote:

> "Even if we were to hold that a presumption of adverseness arises in every case where one person uses a way across another person's land for the prescriptive period, the fact that the claimant's use is of an existing way and the use does not interfere with the owner's use is, in our opinion, enough to rebut the presumption of adverseness."

And in *Beebe v. DeMarco*, 157 Or App 176, 180-81, 968 P2d 396 (1998), *rev den* 328 Or 293 (1999), we stated the governing rule as follows:

> " 'A use that is shown to be open and continuous for a 10-year period is presumptively adverse.' *House v. Hagar*, 130 Or App 646, 651, 883 P2d 261, *rev den* 320 Or 492 (1994). That presumption may be rebutted by a showing that the plaintiffs 'merely used an existing road in a way that did not interfere with defendants' use,' or by a showing that the use was permissive."

The county makes much of evidence that intervenors and the public did not seek plaintiffs' permission before using the road. That observation overlooks the fact, however, that plaintiffs overcame any presumption of adverseness through other evidence. Peppermint Lane was not constructed by

intervenors or the county. Its origin was not clearly established, but it is clear that it has existed for decades. Moreover, any public or private use of the road did not—until recently, if at all—interfere with plaintiffs' use of the road. The persuasive weight of the evidence showed that the condition of the disputed portion of the road, including its surface and grade characteristics, essentially was constant from the early 1970s until the volume of use increased in the mid-1990s. In other words, the use of the road by others did not impair or interfere with its use by plaintiffs or their predecessors. At most, the evidence showed that increased use of the road beginning in 1994 or 1995 became so vexing that plaintiffs eventually brought this action to curb it. Thus, even if public or private use became adverse in the mid-1990s, it did not continue for the requisite 10-year period so as to create prescriptive rights.

 The hearsay evidence of Hudspeth's statement does not alter our conclusion. If Hudspeth thought that the disputed portion of Peppermint Lane was a public road, he was simply mistaken. A "public road" is "a road over which the public has a right of use that is a matter of public record." ORS 368.001(5). There is no evidence in the record that the disputed portion of Peppermint Lane is a public road. Even if Hudspeth mistakenly believed otherwise, it does not follow that he or any other person within the chain of plaintiffs' title intended to acquiesce in *prescriptive* public rights in the road. The hearsay assertion is simply too vague, if not obviously mistaken, to support the existence of a prescriptive public easement.

 Where, as here, (1) a road is used in common by the owners of a putative servient estate and by others; (2) there is no evidence to establish who constructed the road; and (3) the evidence does not establish that the common use interfered, for the requisite period, with the servient owner's use, the claimants of prescriptive rights have not carried their burden of proof. *Trewin v. Hunter*, 271 Or 245, 247-48, 531 P2d 899 (1975); *see also Arana v. Perlenfein*, 156 Or App 15, 20-21, 964 P2d 1125 (1998); *Read v. Dokey*, 92 Or App 298, 301, 758 P2d 399 (1988). After considering all of the evidence, we are not persuaded that either the county or intervenors have met

their burden to prove that the use on which they rely was adverse. In light of our conclusion, we do not reach the parties' other arguments.

Reversed.